Termaine Donte CHAPMAN, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 02S00–9802–CR–72.

Supreme Court of Indiana.

Nov. 19, 1999.

P. Stephen Miller, Fort Wayne, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Rosemary Borek, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

A jury convicted Termaine Donte Chapman of murder and robbery as a Class A felony. He was sentenced to sixty years for murder to be served concurrently with thirty years for robbery. He raises the following three issues in this direct appeal: (1) whether sufficient evidence supports his murder conviction, (2) whether his robbery conviction can be enhanced based on the infliction of serious bodily injury (death) for which he was also convicted under the murder count, and (3) whether the prosecution violated *Brady* by withholding evidence.

### Factual Background

On September 5, 1996, Chapman, Carlos Young, Jr. (C.J.), his cousin Jerry Young (J.D.), Chris Smith, and Johnny Washington were gambling on the second floor hallway of an apartment complex in Fort Wayne. C.J. won several hundred dollars, and Chapman lost "quite a bit" if not all of his money. At one point, Chapman left the game and returned a few minutes later with a handgun. According to Washington, Chapman pointed the gun at the group and told them to put their money on the floor. When C.J. refused to drop his money, Chapman grabbed C.J., put the gun to his head, and asked him, "[D]o you want to catch a bullet?" Without any physical struggle, Chapman fired a single shot to C.J.'s head.[1] J.D., Smith, and Washington all ran from the scene after the shooting. The only money found when the police arrived was $1.77 in C.J.'s pocket. C.J. died from a gunshot to the head.

### I. Sufficiency of the Evidence

Chapman first argues that there was insufficient evidence to prove beyond a reasonable doubt that he committed a

---

1. J.D. and Smith testified to essentially the same story. According to J.D., Chapman first held C.J. by the arm and "it appeared that they were like tussling with each other." Chapman then pointed his gun and told everybody to drop their money. After C.J. refused, Chapman asked if he was "going to take a bullet" for the money, then the two again briefly tussled before Chapman "pushed [C.J.] over on top of [J.D.] and pulled the trigger." Smith testified that he was standing at the door when Chapman "put the gun on C.J. demanding him to put the money down on the floor." After Smith asked Chapman what was going on, Chapman pointed the gun at Smith and Smith shut the door. Smith then opened the door, saw C.J. try to move towards the rail to avoid the gun, and saw Chapman shoot C.J. in the head.

knowing or intentional killing. Our standard of review for sufficiency of the evidence claims is well established. We do not reweigh evidence or assess the credibility of witnesses. We look to the evidence and reasonable inferences drawn therefrom that support the verdict and will affirm the conviction if there is sufficient probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Taylor v. State,* 681 N.E.2d 1105, 1110 (Ind.1997).

██ "[T]he use of a deadly weapon in a manner likely to cause death or serious bodily injury is sufficient evidence of intent to support a conviction for murder." *Torres v. State,* 673 N.E.2d 472, 473 (Ind.1996) (citing *Light v. State,* 547 N.E.2d 1073, 1082 (Ind.1989)); *accord Storey v. State,* 552 N.E.2d 477, 480 (Ind.1990) ("The use of a deadly weapon in a manner likely to cause death or great bodily harm permits the jury to infer the defendant's knowledge that he was killing another."). Smith and Washington saw Chapman hold a gun to C.J.'s head and fire it, and J.D. heard the gunshot immediately before C.J. fell over against him. Moreover, immediately before the shooting Chapman asked C.J. if he wanted to "catch a bullet" or "take a bullet." This is sufficient evidence to support the jury's verdict of a knowing or intentional killing.[2]

## II. Prohibition Against Multiple Punishment

██ In addition to being convicted of murder, Chapman was also convicted of

robbery as a Class A felony. Robbery as a Class C felony is defined by statute as a "person who knowingly or intentionally takes property from another person or from the presence of another person: (1) by using or threatening the use of force on any person; or (2) by putting any person in fear...." Ind.Code § 35–42–5–1 (1998). The offense is a Class B felony if committed while armed with a deadly weapon or if it results in bodily injury to any person other than the defendant. *Id.* It becomes a Class A felony if it results in serious bodily injury to any person other than the defendant. *Id.* Chapman contends, correctly in light of our recent decision in *Richardson v. State,* 717 N.E.2d 32 (Ind.1999), that his robbery conviction cannot be elevated by the same serious bodily injury (death) that formed the basis of his murder conviction. Here, the only injury was the fatal wound from a single gunshot. As a result, the same evidence used by the jury to establish the essential elements of murder was also included among the evidence establishing the essential elements of robbery as a Class A felony, and the two cannot stand. Accordingly, we remand this case to the trial court with instructions to reduce the robbery conviction to a Class B felony.[3]

## III. *Brady* Violation

As a final point, Chapman argues that the State violated *Brady v. Maryland,* 373

---

**2.** The crux of Chapman's argument seems to be that he intended to commit only a robbery and not a murder. Therefore, the argument goes, although the State could have successfully obtained a felony murder conviction, there was insufficient evidence to support a knowing or intentional murder. This argument ignores Chapman's threatening "catching" or "taking" a "bullet" and our well-settled decisional law which holds that a defendant's intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death or serious bodily injury. Whether Chapman intended to kill C.J. was an issue for the jury to decide, and there is sufficient evidence in the record to support its

conclusion. Chapman's discussion of the felony murder rule, particularly his verbatim quotation from *Head v. State,* 443 N.E.2d 44, 48–51 (Ind.1982), which comprises six full pages of his brief, is largely irrelevant. A persuasive six-page quotation is perhaps conceivable, but we have never seen one.

**3.** Chapman is incorrect that the robbery count should be reduced to a Class C felony. The robbery charge included the allegation that he was armed with a handgun. Because the use of a deadly weapon is not an element of the murder charge, elevation to a Class B felony is proper.

U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), when it failed to disclose the likely testimony of witness Andrea Baldwin, a resident of the apartment complex who saw Chapman with a handgun and heard but did not see the shooting. According to Chapman, the State knew what Baldwin "would say and did not disclose the information to the defense. Baldwin's testimony consisted of information that she did not provide to any police officer who made a report."

Baldwin testified at trial that she saw Chapman leave the craps game and, when he returned he was carrying his shoes, had a "little gun" in one shoe, and then took his shirt off. Baldwin watched the men gamble a "little while longer" then returned to her apartment where she and her boyfriend heard a single gunshot "about twenty or thirty minutes" later. Her boyfriend then left the apartment and saw that C.J. had been shot. Baldwin called the police, and ultimately she spoke to several different police officers about the shooting. However, only one police officer prepared a report, and a copy of that report was provided to defense counsel in the course of pretrial discovery.

After Baldwin left the stand, Chapman moved for a mistrial on the basis that the State withheld evidence relating to Baldwin's testimony. Chapman did not offer the detective's report into evidence during the hearing on his motion for a mistrial nor has he otherwise included it in the record of proceedings on appeal. Based on the testimony of the detective who prepared the report, however, it appears that the report did not mention Chapman's taking off his shirt or shoes or Baldwin's seeing Chapman with a gun in his shoe or elsewhere. In response to Chapman's motion for a mistrial, the State pointed out that Baldwin was listed as a witness on the charging information "since day one," and

defense counsel "could have taken her deposition at any time." The trial court denied Chapman's motion, concluding that the items omitted from the report (Chapman's taking off his shoes and shirt and his possession of a gun) were not exculpatory.

■ *Brady* holds that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. 1194.[4] The evidence at issue in this case is neither exculpatory nor material to Chapman's case. *See United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) ("[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."). Chapman argues that the three known eyewitnesses to the murder provided conflicting testimony, and that there

is a reasonable possibility that if counsel had knowledge of the completely different story of Baldwin before trial, he may well have discovered an agreement among the witnesses that the shooting should be blamed on [Chapman] and not anyone else. Counsel does not claim to know if that is in fact what happened, however, to permit the prosecutor to hide testimony of a witness, which testimony is entirely different from three other witnesses whose testimony is filled with inconsistencies, results in a trial in which it is difficult to believe in the result.

This argument is flawed in at least three major respects. First, there is no evidence that the three eyewitnesses ever agreed to blame the shooting on Chapman. This is nothing more than speculation on

---

4. This general rule has since been extended to cover "no request," "general request," and "specific request" cases of prosecutorial failure to disclose evidence favorable to the accused. *See United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

the part of appellate counsel. Second, Baldwin's testimony is not "entirely different" from the testimony of the three eyewitnesses. It is inconsistent only on the minor points of whether Chapman took off his shoes or his shirt, both of which were fully explored by defense counsel's cross-examination of all three eyewitnesses. Baldwin's testimony that she saw Chapman with a "little gun" is corroborated by the testimony of the eyewitnesses who saw Chapman point a handgun (described by Washington as a "small" gun) at C.J. and then shoot C.J. in the head. Finally, the witnesses' testimony is not "filled with inconsistencies." The inconsistencies that Chapman identifies relate to the relative position of Chapman and C.J. at the time of the shooting, whether Chapman had the gun in his hand as he came up the steps or drew the gun when he got to the top of the stairs, and whether or not there was a "tussle" between Chapman and C.J. These are all trivial points in this case, in which the witnesses agree that Chapman had a gun, pointed it at C.J., and pulled the trigger.

Because Baldwin's testimony was in no way exculpatory or material to Chapman's case, there was no *Brady* violation.

### Conclusion

Termaine Donte Chapman's conviction for murder is affirmed. This case is remanded to the trial court with instructions to reduce the robbery count to a Class B felony and impose a sentence of ten years to be served concurrently with the previously imposed sentence for murder.

SHEPARD, C.J., and DICKSON and SULLIVAN, JJ., concur.