Anthony WALKER, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0101–CR–30.

Court of Appeals of Indiana.

Nov. 19, 2001.

Timothy J. O'Connor, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Anthony Walker appeals his conviction for Robbery While Armed With a Deadly Weapon,[1] a class B felony, and his forty-five-year sentence for Voluntary Manslaughter,[2] a class A felony. He presents the following restated issues for review:

1) Did Walker's conviction for robbery as a class B felony violate the Indiana Double Jeopardy Clause[3] where his conviction for voluntary manslaughter was elevated to a class A felony because the offense was committed by means of a deadly weapon?

2) Is Walker's sentence for voluntary manslaughter manifestly unreasonable in light of the nature of the offense and character of the offender?

We affirm in part and remand with instructions.

The facts most favorable to the verdict reveal that in the afternoon on June 23, 1998, Walker met James Smith in a parking lot at Falcon Creek Apartments in Indianapolis, as previously arranged, to purchase marijuana. Walker had walked to this location, while Smith had driven his mother's car. Smith sold three marijuana cigarettes to Walker at a discount. Smith then suggested that they smoke one of the cigarettes together. As they were doing so, Smith became angry and demanded that Walker pay a past debt. The two men scuffled, and at some point a handgun was brandished. Walker proceeded to shoot Smith three times, twice in the back and once in the back of the head.

Following the shooting, Walker obtained the keys to Smith's mother's car and opened the trunk. He removed the speakers from the trunk and discarded them. Walker then lifted Smith's body into the trunk and drove to Sunrise Apartments. After parking in a vacant garage, Walker removed Smith's clothing and threw them in a dumpster along with the car keys and the handgun used in the shooting. Walker also took Smith's cellular phone, which he

---

**1.** Ind.Code Ann. § 35–42–5–1 (West 1998).

**2.** IC § 35–42–1–3 (West Supp.2000).

**3.** Ind. Const. art. I, § 14.

discarded a couple weeks later, and a portable radio, which he gave to his girlfriend for her birthday.

Shortly thereafter, a maintenance man noticed the unfamiliar car and called the police. The car was subsequently towed to an impound lot. When Smith's mother went to recover the car the next evening, she discovered Smith's partially decomposed corpse in the trunk. Smith's mother did not terminate the cell phone account, and phone calls continued to appear on the billing record after his death. Police investigators eventually traced these calls to Walker and questioned him five times concerning his involvement in Smith's death. Walker gave several different stories and, in the last interview on August 6, 1998, finally confessed to the actions set forth above. He maintained, however, that he shot Smith in self-defense.

█ On August 7, 1998, Walker was charged with murder, felony murder, robbery as a class A felony, and auto theft. Following a three-day jury trial, the jury found him guilty of the lesser-included offense of voluntary manslaughter as a class A felony and of robbery and auto theft as charged. The trial court reduced Walker's robbery conviction to a class B felony,[4] refusing to further reduce the conviction to a class C felony. The trial court then imposed the following executed sentence: An enhanced forty-five-year term for voluntary manslaughter; the presumptive ten-year sentence for robbery as a class B felony; and, the maximum three-year sentence for auto theft. The trial court ordered the voluntary manslaughter and robbery sentences to be served consecutively

and the auto theft sentence to run concurrent to those, for an aggregate sentence of fifty-five years. Walker now appeals.

1.

Walker first argues that the use of the handgun to enhance both his voluntary manslaughter conviction and his robbery conviction violated Indiana's Double Jeopardy Clause and, therefore, contends that his robbery conviction should be reduced to a class C felony. He correctly observes that his voluntary manslaughter conviction was enhanced from a class B felony to a class A felony because the offense was committed by means of a deadly weapon, and his robbery conviction was enhanced from a class C felony to a class B felony because the offense was committed while armed with a deadly weapon.

█ Two convictions may be the same offense in violation of the Indiana Double Jeopardy Clause if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. *Richardson v. State,* 717 N.E.2d 32 (Ind. 1999). Where a criminal statute provides for the elevation of a charge to a more serious crime based upon an additional element, the Richardson double jeopardy analysis applies. *Curry v. State,* 740 N.E.2d 162 (Ind.Ct.App.2000), *trans. denied; see also Richardson v. State,* 717 N.E.2d at 56 (Sullivan, J., concurring) ("to the extent that a defendant's conviction for one crime is enhanced for engaging in particular additional behavior or causing

---

4. The trial court properly determined that Walker could not be convicted of voluntary manslaughter and robbery as a class A felony where the same evidence of Smith's death that was used to support Walker's voluntary manslaughter conviction was also used to es-

tablish serious bodily injury and thereby elevate the robbery conviction to a class A felony. *See Spears v. State,* 735 N.E.2d 1161 (Ind.2000); *Elwood v. State,* 673 N.E.2d 1 (Ind.Ct.App.1996).

particular additional harm, that behavior or harm cannot also be used as an enhancement of a separate crime" except "where separate victims are involved or the behavior or harm that is the basis of the enhancement is distinct and separate").

■ Walker concedes that his convictions do not violate the statutory elements test and advances an argument based solely upon the actual evidence test.

Under this inquiry, the actual evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.

*Richardson v. State*, 717 N.E.2d at 53.

Our supreme court's decision in *Chapman v. State*, 719 N.E.2d 1232 (Ind.1999) strongly suggests that Walker's robbery conviction must be reduced to a class C felony. In that case, Termaine Chapman pointed a gun at a group of individuals playing poker and told them to put their money on the floor. When Carlos Young refused, Chapman grabbed Young, put the gun to his head, and asked, "[D]o you want to catch a bullet?" Id. at 1233. Chapman then fired a single shot to Young's head. A jury convicted Chapman of murder and robbery as a class A felony. Concluding that his robbery conviction could not be elevated by the same serious bodily injury that formed the basis of his murder conviction, the supreme court remanded the case to the trial court with instructions to re-

duce the robbery conviction to a class B felony. In a footnote, the court explained:

Chapman is incorrect that the robbery count should be reduced to a Class C felony. The robbery charge included the allegation that he was armed with a handgun. *Because the use of a deadly weapon is not an element of the murder charge, elevation to a Class B felony is proper.*

*Id.* at 1234 n. 3 (emphasis supplied).

■ In the case before us, the use of a deadly weapon is an element of voluntary manslaughter as a class A felony. Therefore, we must reasonably infer from *Chapman* that elevation of Walker's robbery conviction to a class B felony is improper.

We recognize our pre-*Richardson* cases that have broadly held that double jeopardy is not violated by the elevation of multiple felony charges on the basis that the defendant was armed with a deadly weapon while committing separate and distinct crimes. *See e.g. Hart v. State*, 671 N.E.2d 420 (Ind.Ct.App.1996); *Lingler v. State*, 635 N.E.2d 1102 (Ind.Ct.App.1994), *aff'd in relevant part*, 644 N.E.2d 131 (Ind. 1994). We have explained the reason behind the rule as follows:

"The element causing the elevation of [the defendant's] offense was not the act of harming someone. It was the threat of harm from a deadly weapon. That threat occurred during each of the offenses for which [the defendant] was convicted and as such was properly punishable."

*Barker v. State*, 622 N.E.2d 1336, 1338 (Ind.Ct.App.1993) (quoting *White v. State*, 544 N.E.2d 569, 570 (Ind.Ct.App.1989), *trans. denied*), *trans. denied*. While this rule may still hold true in most instances, in light of *Richardson*, we must further analyze the actual evidence used in each

case to support the enhanced convictions.[5]

In the instant case, the evidence establishing armed robbery was clearly intertwined with the evidence establishing voluntary manslaughter as a class A felony. Walker's act of shooting Smith with a handgun was used by the State not only to establish murder, ultimately determined by the jury to be voluntary manslaughter, but was also the focus for establishing the force used to commit the robbery.[6] This force occurred while armed with a deadly weapon. Although Walker may have been armed when he later removed the cell phone from Smith's person, the State did not seek to establish this. Further, the threat of harm from the deadly weapon, as addressed in *Barker* and *White*, had already materialized, and the State presented no evidence of an additional threat of harm.

In light of the actual evidence presented at trial, we conclude that there is a reasonable possibility that the evidentiary facts used by the jury to enhance Walker's conviction for voluntary manslaughter may also have been used to enhance his conviction for robbery. We accordingly remand this case to the trial court with instructions to reduce the robbery conviction to a class C felony and to reduce his corresponding sentence to the presumptive sentence of four years.

### 2.

■ Walker also challenges his enhanced sentence for voluntary manslaughter. He contends that his forty-five-year sentence, which he portrays as nearly the maximum sentence, is manifestly unreasonable and should be reduced to the presumptive sentence.[7]

■ Although we have constitutional authority to review and revise sentences, pursuant to Ind. Const. art. VII, § 4, we will not do so unless the sentence imposed is "manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B) (formerly Ind. Appellate Rule 17(B)). This review is extremely deferential to the trial court. The issue is not whether in our judgment the sentence is unreasonable, but whether it is clearly, plainly, and obviously so. *Spears v. State*, 735 N.E.2d 1161.

Walker was eighteen when he committed the instant offenses, and he had no criminal or juvenile history. While his lack of criminal history is clearly mitigating, the nature of the offense is severe and troubling and his actions thereafter reflect poorly on his character. The jury found that Walker acted in sudden heat when he shot Smith, but that does not change the fact that he shot Smith twice in the back and once in the head. Further, as discussed in the trial court's sentencing statement, Walker's actions after the shooting were not sudden and rash, but rather cold and calculated. He retrieved the keys to

---

**5.** In *Stafford v. State*, 736 N.E.2d 326 (Ind.Ct. App.2000), *trans. denied*, we noted this rule while applying the actual evidence test.

**6.** In its final argument, the State briefly addressed the robbery as follows:

There should be no dispute of the robbery. Did he take from the person or the presence of another individual property by using force on them? Yes, he did. He killed him. Now, you're going to hear some argument undoubtedly—well, he took it afterwards.

It doesn't matter. Do you think that James Smith—based on the evidence—do you think James Smith would have given him his cell phone, or did give him his cell phone but for him killing James Smith. It's just simply that simple.
*Transcript* at 271–72.

**7.** The presumptive sentence for a class A felony is thirty years, and the maximum sentence is fifty years. Ind.Code Ann. § 35–50–2–4 (West 1998).

Smith's car, opened the trunk, discarded speakers to make room, and lifted Smith into the trunk of the car. He then drove the car into a vacant garage at a nearby apartment complex and proceeded to strip Smith's lifeless body. Walker did not stop at methodically removing evidence of the crime; he further took a radio for his girlfriend's birthday, which happened to be that same day, and Smith's cell phone, which Walker and his girlfriend used until police began seeking him for questioning. When questioned by police, Walker provided several different stories and, over a month's time, led investigators on numerous wild-goose chases before he confessed.

Walker's aggregate sentence of forty-nine years, and in particular his sentence of forty-five years for voluntary manslaughter, is not manifestly unreasonable for these offenses and this offender.

Judgment affirmed in part and remanded with instructions.

BAKER, J., and ROBB, J., concur.