James WATKINS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0103–CR–151.

Court of Appeals of Indiana.

April 9, 2002.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

James Watkins ("Watkins") was charged by Information with Felony Murder,[1] Murder,[2] and Robbery, as a Class A felony.[3] Watkins was tried by jury. The jury returned guilty verdicts on all counts. The trial court entered judgments of conviction on Murder and Robbery as a Class B felony, and imposed aggravated sentences of sixty years for Murder and fifteen years for Robbery, to be served consecutively. We affirm.

### Issues

Watkins raises three issues on appeal, which we restate as follows:

I. Whether Watkins' convictions for Murder and Robbery are supported by sufficient evidence;

II. Whether Watkins' convictions for Murder and Robbery violate the double jeopardy clause of the Indiana Constitution; and

III. Whether the prosecutor committed misconduct by shifting the burden of proof to Watkins during closing argument.

### Facts and Procedural History

Jimmy Anderson ("Anderson") and Cara Edwards ("Edwards") lived together at the Wingate Village Apartments. Anderson sold marijuana to friends and neighbors

Janice L. Stevens, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

1. IND.CODE § 35–42–1–1(2).

2. IND.CODE § 35–42–1–1(1).

3. IND.CODE § 35–42–5–1.

that lived in the apartment complex. On the morning of September 15, 1999, Edwards left for work and locked the deadbolt to her apartment with her key, while Anderson remained asleep in bed. At 11:14 that morning Edwards called Anderson and told him that she was going to come home during her lunch hour and smoke a joint. Minutes later, Star Easley ("Easley"), who lived in a neighboring apartment, saw three men leave Anderson and Edwards' apartment building. Phone calls placed to Anderson's apartment between 11:38 a.m. and 11:45 a.m. went unanswered. Edwards and two of her co-workers clocked out of work at 11:45 and drove to her apartment. When they arrived several minutes later at the apartment Edwards unlocked the dead-bolted door and found Anderson dead on the floor. Anderson's gold chain, his wallet with $250.00, his keys, and two ounces of marijuana were gone.

One of the individuals to whom Anderson had previously sold marijuana was Watkins' brother, neighbor Ezra Watkins ("Ezra"). Ezra lived in an apartment building situated perpendicular to that of Anderson and Edwards. Easley identified Ezra and Watkins as two of the three men that she saw leaving Edwards' apartment that day.[4]

Anderson died as a result of five stab wounds to his neck. The wounds were caused by a knife with a blade length of four to five inches and a width of ¾ of an inch. A knife matching this description was found in Watkins' apartment. The stab wounds to Anderson's neck cut through his carotid artery and into the cartilage of his larynx. No defensive wounds were found on Anderson's body.

Watkins told police that he had never been inside Anderson's apartment, however Watkins' right palm print was discovered on the south foyer wall near Anderson's body. The State charged Watkins with Felony Murder, Murder, and Robbery as an A felony. The jury found Watkins guilty as charged. The trial court, noting double jeopardy concerns, entered a judgment of conviction against Watkins for Murder and Robbery as a class B felony. Watkins appeals his convictions.

## Discussion and Decision

### I. *Sufficiency of the Evidence*

Watkins argues that "[n]o evidence was presented to show that [he] was involved, participated or aided anyone else in the commission of the [charged] offense[s]," and as such that the evidence was insufficient to support his convictions for Murder and Robbery. Brief of Appellant at 6. We disagree.

#### *Standard of Review*

■ Our standard of review for claims challenging the sufficiency of the evidence is well settled. Whether the evidence is direct or circumstantial, we will not reweigh it or assess the credibility of witnesses. *Moore v. State*, 652 N.E.2d 53, 55 (Ind.1995). We consider only the evidence most favorable to the verdict and the reasonable inferences that can be drawn therefrom. *Davis v. State*, 658 N.E.2d 896, 897 (Ind.1995). A murder conviction may be based entirely on circumstantial evidence. *Franklin v. State*, 715 N.E.2d 1237, 1241 (Ind.1999). Such circumstantial evidence will be deemed sufficient if inferences may reasonably be drawn that enable the trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

---

**4.** As a co-defendant, Ezra was charged, tried, and convicted on the same counts as his brother.

*Rules of Law*

To convict Watkins of Murder, the State was required to prove beyond a reasonable doubt that Watkins knowingly or intentionally killed Anderson. *See* IND.CODE § 35–42–1–1(1). To sustain Watkins' conviction for Robbery, as a Class B felony, the evidence must have shown that Watkins knowingly or intentionally took Anderson's property by using force while armed with a deadly weapon. *See* IND. CODE § 35–42–5–1.

■ We must further consider that Watkins' mere presence at the crime scene, with the opportunity to commit these crimes, is not a sufficient basis on which to support a conviction. *See Fry v. State,* 748 N.E.2d 369, 373 (Ind.2001.) However, his presence at the scene in connection with other circumstances tending to show participation may be sufficient to sustain a conviction. *See id.*

*Analysis*

■ Here, the jury was presented in part with the following evidence: Easley saw Watkins leaving Anderson's apartment building around the time of Anderson's death; Watkins denied ever being in Anderson's apartment, yet his palm print was found on the foyer wall of Anderson's apartment; a knife matching the physical characteristics of the weapon used to kill Anderson was recovered from Watkins' apartment; and, cash, jewelry, keys and marijuana were missing from Anderson's apartment. From this evidence an inference may reasonably be drawn which supports the finding that Watkins knowingly or intentionally killed and robbed Anderson.

## II. *Double Jeopardy*

Watkins also contends that his convictions for Murder and Robbery as a Class B felony violate the double jeopardy clause of the Indiana Constitution. Specifically, Watkins argues that his robbery conviction should be reduced to a Class C felony. We disagree.

*Rule of Law*

■ Where a criminal statute provides for the elevation of a charge to a more serious crime based upon an additional element, the *Richardson* double jeopardy analysis applies. *Walker v. State,* 758 N.E.2d 563, 565 (Ind.Ct.App. 2001). *Richardson v. State,* 717 N.E.2d 32 (Ind.1999), describes two components, the statutory elements test and the actual evidence test. *Id.* at 49. Two offenses are the same offense in violation of Article I, section 14 of the Indiana Constitution if, "with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id.* Watkins argues that his convictions, for Murder and Robbery as a Class B felony, violate the actual evidence test. To show that two challenged offenses constitute the same offense under the actual evidence test, "a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.* at 53.

*Analysis*

In the instant case, the State's Murder and Robbery charges read as follows:

COUNT II

EZRA I. WATKINS and JAMES D. WATKINS, on or about SEPTEMBER 15, 1999, did knowingly kill another human being, namely: JAMES ANDERSON, by STABBING with a

deadly weapon, that is: A KNIFE, at and against the person of JAMES ANDERSON, thereby inflicting mortal injuries upon JAMES ANDERSON, causing JAMES ANDERSON to die;

COUNT III

EZRA I. WATKINS and JAMES D. WATKINS, on or about SEPTEMBER 15, 1999, did knowingly, while armed with a deadly weapon, that is: A KNIFE, take from the person or presence of JAMES ANDERSON property, that is: a wallet and contents, jewelry, marijuana, and keys, by putting JAMES ANDERSON in fear or by using or threatening the use of force on JAMES ANDERSON, which resulted in serious bodily injury, that is: STAB WOUNDS OF THE NECK AND BACK, RESULTING IN DEATH, to JAMES ANDERSON;

(App. 40–41.) The jury returned guilty verdicts on both of the above counts and the Felony Murder charge, but when the trial court entered judgment it reduced Count III from a Class A felony to a Class B felony, ruling as follows:

The Court will enter judgment of conviction in each case . . . on Counts II and III. And with respect with Count I, which is the Felony Murder, you need to put a "P" [for proven] in the code. As to Count III, the serious bodily injury is also an elevator, or enhancement, is precluded because it is the same as the death. So as to Count III, the Court will find the Defendants guilty of a lesser, that is: Robbery as a Class B felony.

(Tr. 900–01.) In doing so, the trial court avoided the double jeopardy implications of the jury's verdict.

**5.** Indiana Code section 35–42–5–1 provides as follows:

In *Chapman v. State*, 719 N.E.2d 1232 (Ind.1999), the jury convicted the defendant of Murder and Robbery as a Class A felony. In that case, Chapman pointed a gun at a group of four individuals with whom he had been playing poker and told them to put their money on the floor, when one of the individuals refused, Chapman grabbed him, put a gun to his head, and asked, "Do you want to catch a bullet?" *Id.* at 1233. Chapman then fired a single shot to the individual's head. At trial, the foregoing account of events was given by all three of the other poker players. However, determining that Chapman's robbery conviction could not be elevated by the same serious bodily injury that formed the basis of his murder conviction, our supreme court remanded the case to the trial court with instructions to reduce the robbery conviction to a Class B felony. In doing so, our supreme court ruled in part as follows:

Chapman is incorrect that the robbery count should be reduced to a Class C felony. The robbery charge included the allegation that he was armed with a handgun. Because the use of a deadly weapon is not an element of the murder charge, elevation to a Class B felony is proper.

*Id.* at 1234 n. 3. In cases where the charges are murder and robbery, but it has *not* been alleged that the defendant was armed with a deadly weapon, our supreme court has reduced the robbery conviction to a Class C felony. *See Logan v. State*, 729 N.E.2d 125, 137 (Ind.2000) (holding in part that Robbery as a Class B felony is not necessarily a lesser-included offense of Robbery as a Class A felony). *See also Kingery v. State*, 659 N.E.2d 490, 495 (Ind.1995).[5]

Sec. 1. A person who knowingly or intentionally takes property from another person or from the presence of another person:

■ Here, similar to *Chapman*, the element of "armed with a deadly weapon" (in this case armed with a knife), was a requisite element of the trial court's final instruction regarding Robbery.[6] Yet, unlike *Chapman*, Watkins' convictions were supported entirely by circumstantial evidence, including his possession of a knife. As such, our double jeopardy analysis is not completely akin to that of *Chapman*. Given the circumstantial nature of the evidence relied upon for Watkins' convictions (*see infra.*), there remains the double jeopardy question of whether it is reasonably possible that the jury relied on Watkins' possession of the knife recovered from his apartment to support the essential elements of the Murder charge and the "armed with a deadly weapon" element that was included in Watkins' Class A Robbery charge, and remained a requisite element of his Class B conviction. However, given the forensic evidence presented at trial and the language of the trial court's final instructions,[7] we hold that it was not reasonably possible that the same actual evidence, namely the recovered knife, was relied on to arrive at the Class B robbery element of "armed with a deadly weapon" and the requisite murder elements of "knowingly" and "kill."

While the jury *may* have relied on the recovered knife to establish that Watkins was armed with a deadly weapon, it was separate forensic evidence that established

(1) by using or threatening the use of force on any person; or
(2) by putting any person in fear;
commits robbery, a Class C felony. However, the offense is a Class B felony if it is committed while armed with a deadly weapon or results in bodily injury to any person other than a defendant, and a Class A felony if it results in serious bodily injury to any person other than a defendant.

6. The trial court instructed the jury on Robbery as follows:

The crime of robbery is defined by statute as follows:
A person who knowingly or intentionally takes property from another person or from the presence of another person by using or threatening the use of force on any person or by putting any person in fear, commits robbery, a Class C felony. However, the offense is a Class B felony if committed while armed with a deadly weapon, and is a Class A felony if it results in serious bodily injury to any person other than a defendant.
To convict the defendant, the State must have proven each of the following elements:
The defendant, James Watkins;
1. did knowingly,
2. while armed with a deadly weapon, that is: a knife,
3. take from the person or presence of James Anderson property, that is: a wallet and contents, jewelry, marijuana, and keys,

4. by putting James Anderson in fear or by using or threatening the use of force on James Anderson,
5. which resulted in serious bodily injury to James Anderson, that is: stab wounds [to] the neck and back resulting in death to James Anderson.
(App. 205.)

7. The trial court's instruction on Murder read as follows:

The crime of murder is defined by statute as follows:
A person who knowingly or intentionally kills another human being, commits murder, a felony.
To convict the defendant, the State must have proven each of the following elements:
The defendant, James Watkins;
1. did knowingly,
2. kill,
3. another human being, namely: James Anderson.
If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty of Murder, a felony, as charged in Count II.
If the State did prove each of these elements beyond a reasonable doubt, you should find the defendant guilty of Murder, a felony, as charged in Count II.
(App. 203.)

Anderson's death as a knowing killing. Specifically, the jury was presented with evidence that Anderson's throat was penetrated five times, cutting through his carotid artery and into the cartilage of his larynx, and that Anderson displayed no defensive wounds. Additionally, cash, keys and marijuana were missing from Anderson's apartment. From this evidence alone it was clear that Anderson was knowingly killed and robbed by a perpetrator armed with a deadly weapon—most likely a knife. *See Lewis v. State*, 740 N.E.2d 550, 552 (Ind.2000) (holding in part that the severity of a victim's injuries may be sufficient evidence from which a trier of fact can conclude beyond a reasonable doubt that a victim has been knowingly killed); and, *Hampton v. State*, 719 N.E.2d 803, 807 (Ind.1999) (holding more generally that a verdict may be sustained based on circumstantial evidence alone if that circumstantial evidence supports a reasonable inference of guilt).

The only question that remained was whether the State proved beyond a reasonable doubt that Watkins was the one that committed these crimes. As to this question of identity, the jury may have relied on Watkins' possession of a knife, (along with his palm print, denials of ever being in Anderson's apartment, and his placement within the vicinity of the crimes), to conclude that *he* committed the crimes. However, the double jeopardy issue is not whether there is sufficient evidence to identify Watkins as the perpetrator of multiple crimes, but whether he received multiple punishments for the same offense. Stated differently, the evidence of Watkins' possession of a knife may have assisted the jury in identifying Watkins as the perpetrator of these crimes against Anderson, but it was not critical to establishing the essential elements of murder, namely, "knowingly" and "kill."

Moreover, the trial court's final instruction on Murder ensured that the jury considered only the elements of "knowingly," "kill," and "human being, namely: James Anderson[,]" all of which could be satisfied without considering Watkins' possession of a knife. (App. at 203.) Accordingly, it is not reasonably possible that the jury applied the evidence of Watkins possession of a knife to meet both the element of "armed with a deadly weapon[,]" within Class B robbery, and any of the essential elements of murder.

### III. *Prosecutorial Misconduct*

Lastly, Watkins asserts that "[t]he prosecutor improperly shifted the burden of proof to the defense in his closing argument when he referred to [Watkins'] failure to present evidence and testify." Brief of Appellant at 7. We disagree.

#### *Rule of Law*

■■■ When faced with alleged prosecutorial misconduct, a defendant is required to object and request an admonishment. *Reid v. State*, 719 N.E.2d 451, 458 (Ind.Ct.App.1999.) If, after an admonishment, the defendant is still not satisfied, the proper procedure is to move for mistrial. *Id.* The failure to request an admonishment or move for mistrial results in waiver of the issue. *Id.* Here, Watkins failed to object to the State's closing argument, but attempts to avoid waiver by arguing that the prosecutor's comments amounted to fundamental error.

■■■ Prosecutorial misconduct may amount to fundamental error. *Stowers v. State*, 657 N.E.2d 194, 198 (Ind.Ct.App. 1995.) For prosecutorial misconduct to be fundamental error, it must have subjected the defendant to grave peril and had a probable persuasive effect on the jury's decision. *Id.* The gravity of the peril turns on the probable persuasive effect of the misconduct on the jury's decision, not

on the degree of impropriety of the conduct. *Id.*

When we review a properly preserved claim of prosecutorial misconduct, we first determine whether the prosecutor engaged in misconduct and then consider whether, under all of the circumstances, the prosecutor's misconduct placed the defendant in a position of grave peril to which he should not have been subjected. *Hancock v. State,* 737 N.E.2d 791, 797 (Ind.Ct.App.2000). This inquiry depends upon an analysis of the probable persuasive effect any misconduct had on the jury's decision, and whether the alleged misconduct was repeated such that it appears that the prosecutor engaged in a deliberate attempt to improperly prejudice the defendant. *Id.*

### Analysis

Here, waiver notwithstanding, we address Watkins' contentions. Watkins argues that the following statements contained in the prosecutor's closing statement improperly shifted the burden of proof and improperly remarked on his decision not to testify:

> Mr. Marchal [defense counsel] has presented a mere possibility to you, no evidence. *Theory and conjecture is what he presents. No evidence.*
>
> . . . .
>
> Now, again, Mr. Marchal presents to you the possibility, and only the possibility, because there's no evidence, that *the Defendant might have said he wasn't there [at Anderson's apartment]* for an alterior motive.

(Emphasis added.) (Tr. 885, 887.) However, the trial court gave the following preliminary instruction regarding the burden of proof:

> Under the law of this State, a person charged with a crime is presumed to be innocent. To overcome the presumption of innocence, the State must prove that each defendant guilty of each essential element of the crimes charged, beyond a reasonable doubt.
>
> No defendant is required to present any evidence to prove his innocence or to prove or explain anything.

(App. 169.) Given this instruction, we find any impropriety in the prosecutor's closing to be *de minimis. See Chubb v. State,* 640 N.E.2d 44, 49 (Ind.1994.) As such, it is not probable that the prosecutor's comments had a persuasive effect on the jury. Moreover, the comments are isolated in nature and do not appear to be a deliberate attempt to improperly prejudice the defendant.

Affirmed.

SHARPNACK, J., and DARDEN, J., concur.