

FILED

Feb 28 2019, 8:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jordan B. Wadle, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff*. | February 28, 2019 <br><br> Court of Appeals Case No. <br> 18A-CR-1465 <br><br> Appeal from the Fayette Superior Court <br><br> The Honorable J. Steven Cox, Special Judge <br><br> Trial Court Cause No. <br> 21D01-1511-F3-912 |

**Mathias, Judge.**

[1]     Following a jury trial in Fayette Superior Court, Jordan B. Wadle ("Wadle") was convicted of Level 3 felony leaving the scene of an accident, Level 5 felony operating a vehicle while intoxicated ("OWI") causing serious bodily injury, Level 6 felony OWI endangering a person, and Class C misdemeanor operating

a vehicle with an alcohol concentration equivalent ("ACE") of 0.08 or more.[1] On appeal, Wadle contends that his convictions for leaving the scene of an accident and driving while intoxicated constitute impermissible double jeopardy.

We affirm in part, reverse in part, and remand.

## Facts and Procedural History

On November 12, 2015, the victim in this case, Charles Woodward ("Charles") and his wife Nancy went to a bar in Connersville, Indiana with Charles's brother Ed and Ed's wife Nisa. While Nisa spoke with a friend at the bar, Wadle smacked her back. When Nisa objected, Wadle stated that the next time he smacked Nisa, he would smack her "lower," apparently referring to her buttocks. Tr. Vol. I, p. 114. Nisa responded that her husband Ed would not like it if Wadle smacked her bottom, which prompted Wadle to state that he was not afraid of Nisa's husband and would beat him up. At some point thereafter, Nisa informed Ed of Wadle's behavior and comments. Ed went outside to the parking lot to confront Wadle as Wadle prepared to leave. Charles, seeing that

---

[1] As explained *infra*, Wadle was initially charged with Class A misdemeanor operating a vehicle with an ACE of 0.15 or more on this count. The State later amended this count, alleging that Wadle committed Class C misdemeanor operating a vehicle with an ACE of 0.08 or more. The State also alleged that Wadle had a prior conviction for OWI, thereby elevating this charge to a Level 6 felony. The jury found Wadle guilty of the Class C misdemeanor, and Wadle admitted to the prior conviction. However, there is no indication in the record that the trial court convicted Wadle of the elevated Level 6 felony. Instead, the trial court's sentencing order and abstract of judgment show that Wadle was convicted of a Class A misdemeanor on this count. Yet Wadle was not charged with a Class A misdemeanor on this count. Because we ultimately reverse Wadle's conviction on this count due to double jeopardy concerns, any error in his conviction on this count is harmless.

his brother was upset, followed Ed outside.

[4] When Charles went outside, he saw Ed standing near a group of people that included a now-shirtless Wadle. Neither Charles nor anyone else struck Wadle, but Wadle attacked Charles by hitting and kicking him. Wadle then got into his car and began to back his car out of the parking lot, driving in reverse through the group of people that had gathered. Wadle then drove his car at Charles, who had turned to re-enter the bar. Wadle struck Charles with his car, knocking him to the ground. Charles attempted to get back up, but Wadle struck him again, knocking him underneath the guardrail near the outside wall of the bar. Wadle drove away, and Ed telephoned 911.

[5] Local police then began to look for Wadle and soon spotted him a few miles outside of Connersville. The police initiated a traffic stop and noted the smell of alcohol coming from Wadle. They also noticed that he had bloodshot eyes, slurred speech, and was unsteady on his feet. The police took Wadle to a hospital for a blood draw, which revealed that Wadle's blood alcohol level was 0.14.

[6] As a result of being hit by Wadle's car, Charles suffered serious injuries. His skull was fractured, and he had bleeding on the brain. Charles had to undergo surgery that involved the removal of a portion of his skull and the insertion of a metal plate. He also sustained broken ribs, which necessitated two surgeries. Charles was placed in an induced coma and spent a total of sixty days in the hospital and twenty-one additional days at a rehabilitation center.

[7] On November 16, 2015, the State charged Wadle with Count I, Level 3 felony aggravated battery; Count II, Level 3 felony leaving the scene of an accident; Count III, Level 6 felony OWI causing serious bodily injury; Count IV, Class A misdemeanor OWI endangering a person; and Count V, Class A misdemeanor operating a motor vehicle with an ACE of 0.15 or more. On March 1, 2018, the State filed amendments to the charging information alleging that Wadle had a previous conviction for OWI, thereby elevating Count III to a Level 5 felony and Count IV to a Level 6 felony. The State also amended Count V to allege that Wadle committed Class C misdemeanor operating a motor vehicle with an ACE of 0.08 or more but also filed a Part II to this count, elevating the charge to a Level 6 felony based on the prior conviction.

[8] A bifurcated jury trial took place on March 12–13, 2018. At the conclusion of the first phase of the trial, the jury acquitted Wadle on Count I, but found him guilty on the remaining counts. Specifically, the jury found Wadle guilty on Count II as a Level 3 felony, Count III as a Level 6 felony, Count IV as a Class A misdemeanor, and Count V as a Class C misdemeanor. In the second phase of the trial, Wadle admitted that he had a prior conviction for OWI and pleaded guilty to the enhancements of the charges that were based on his prior conviction.

[9] On May 16, 2018, the trial court sentenced Wadle as follows: Count II, sixteen years, with two years suspended to probation; Count III, six years, with two years suspended to probation; Count IV, two and one-half years, with two years

suspended to probation; and Count V, one year.[2] The court ordered all sentences to be served concurrently. Wadle now appeals.

## I.  The Actual Evidence Test

[10] Wadle claims that his convictions for OWI and leaving the scene of an accident constitute impermissible double jeopardy under the Indiana Constitution. Article 1, Section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." In *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999), our supreme court held that "two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." (emphases in original).

[11] Wadle admits that his convictions do not amount to double jeopardy under the "statutory elements" test but contends that his convictions do amount to double jeopardy under the *Richardson* "actual evidence" test. Under the actual evidence test, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish all the essential elements of a second challenged offense. *Singh v. State*, 40 N.E.3d 981, 986 (Ind. Ct. App. 2015),

---

[2] As noted above, the trial court's sentencing order and the abstract of judgment show that Wadle was convicted of a Class A misdemeanor on this count.

*trans. denied*, (citing *Richardson*, 717 N.E.2d at 53). The term "reasonable possibility" "turns on a practical assessment of whether the jury may have latched on to exactly the same facts for both convictions." *Id.* (citing *Spivey v. State*, 761 N.E.2d 831, 832 (Ind. 2002)). The actual evidence test "is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense." *Spivey*, 761 N.E.2d at 833.

[12] Application of the actual evidence test requires us to identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective. *Singh*, 40 N.E.3d at 986 (citing *Lee v. State*, 892 N.E.2d 1231, 1234 (Ind. 2008)). "[A] 'reasonable possibility' that the jury used the same facts to reach two convictions requires substantially more than a logical possibility." *Garrett v. State*, 992 N.E.2d 710, 719 (Ind. 2013) (citing *Lee*, 892 N.E.2d at 1236). Accordingly, when reviewing a claim under the actual evidence test, we consider the essential elements of the offenses, the charging information, the jury instructions, the evidence, and the arguments of counsel. *Id.* at 720; *Singh*, 40 N.E.3d at 986 (both citing *Lee*, 892 N.E.2d at 1234).

[13] In the present case, Wadle was convicted of leaving the scene of an accident. Pursuant to the controlling statute, a driver involved in an accident must generally remain at the scene or as close as possible to the scene of the accident until the operator gives his or her name, address, and registration number of the vehicle and exhibits his or her driver's license to any other person involved in the accident. Ind. Code § 9-26-1-1.1(a)(1), (2). In addition, if the accident results

in injury to another person, the operator shall also provide reasonable assistance to the injured person, as directed by law enforcement or medical personnel and give notice, or ensure that someone else gives notice, as soon as possible after the accident to local police, sheriff's department, state police, or 911 operators. Ind. Code § 9-26-1-1.1(a)(3). A person who knowingly or intentionally fails to comply with these requirements commits a Class B misdemeanor. *Id*. at § 1.1(b). However, the offense is "a Level 3 felony if the operator knowingly or intentionally fails to stop or comply with subsection (a) *during or after the commission of the offense of operating while intoxicated causing serious bodily injury . . . ." Id*. at § 1.1(b)(4) (emphasis added).

[14] Here, pursuant to this statute, Wadle's conviction for leaving the scene of an accident was elevated to a Level 3 felony because he fled the scene of an accident after having committed the offense of OWI causing serious bodily injury. He was also convicted of OWI causing serious bodily injury. This, Wadle claims, violated the actual evidence test. Specifically, Wadle argues that when applying the actual evidence test in cases where a base offense has been elevated, "one must view the elevation of a felony from its base level almost as if the elevation itself were a separate offense under the actual evidence test, such that its essential elements cannot be established by the same evidence used to establish another offense's essential elements." Appellant's Br. at 14. In other words, Wadle argues that if the evidentiary facts supporting the elevation also establish all of the elements of another crime, both convictions cannot stand.

[15] There is support for Wadle's position in case law from our supreme court. *See*

*Wieland v. State*, 736 N.E.2d 1198, 1206 (Ind. 2000) (agreeing with State's concession that conviction for conspiracy to commit robbery and robbery, both elevated to Class A felonies based upon death of victim, could not stand when victim's death also established elements of felony murder); *Spears v. State*, 735 N.E.2d 1161, 1164–65 (Ind. 2000); *Grace v. State*, 731 N.E.2d 442, 446 (Ind. 2000); *Logan v. State*, 729 N.E.2d 125, 136 (Ind. 2000); *Lowrimore v. State*, 728 N.E.2d 860, 868 (Ind. 2000); *Chapman v. State*, 719 N.E.2d 1232, 1234 (Ind. 1999); *Hampton v. State*, 719 N.E.2d 803, 809 (Ind. 1999) (all holding that convictions for both murder and robbery elevated to a Class A felony constituted double jeopardy under the actual evidence test where the evidence of serious bodily injury—the victim's death—was used to both elevate the robbery conviction and establish the elements of murder); *Johnson v. State*, 749 N.E.2d 1103, 1108 (Ind. 2001) (holding that defendant's convictions for murder and burglary elevated to a Class A felony constituted double jeopardy where the evidence of serious bodily injury—the victim's death—was used to both elevate the burglary conviction and establish the elements of murder); *Roby v. State*, 742 N.E.2d 505, 509 (Ind. 2001) (holding that defendant's convictions for murder and neglect of a dependent elevated to a Class B felony constituted double jeopardy where the same evidence of serious bodily injury was used to both elevate the neglect conviction and establish the elements of murder); *Mitchell v. State*, 726 N.E.2d 1228, 1244–45 (Ind. 2000) (same), *overruled in part on other grounds by Beattie v. State*, 924 N.E.2d 643 (Ind. 2010).

[16] Based upon the holding of these cases, we conclude that the actual evidence test

is met, and double jeopardy established, where the evidence establishing the elevation of one or more convictions is also used to establish all the elements of another conviction.[3] And under this analysis, Wadle's convictions for both Level 3 felony leaving the scene of an accident and Level 5 felony OWI causing serious bodily injury constitute double jeopardy because the evidence establishing the elements of the elevation of the conviction for leaving the scene (committing the offense of OWI causing serious bodily injury) was the same evidence used to establish the elements of his conviction for OWI causing serious bodily injury.[4]

[17]   In short, the evidentiary facts used to elevate one of Wadle's convictions were also used to establish all the elements of a second conviction. This violates the

---

[3] The same is true when multiple convictions are elevated based on the same evidence. *See e.g., Boss v. State*, 964 N.E.2d 931, 938 (Ind. Ct. App. 2012); *Mendenhall v. State*, 963 N.E.2d 553, 572 (Ind. Ct. App. 2012), *trans. denied*; *Smith v. State*, 881 N.E.2d 1040, 1048 (Ind. Ct. App. 2008); *Walker v. State*, 758 N.E.2d 563, 567 (Ind. Ct. App. 2001), *trans. denied*; *Curry v. State*, 740 N.E.2d 162, 166–67 (Ind. Ct. App. 2000), *trans. denied* (all holding that actual evidence test was met, and constitutional prohibition against double jeopardy violated, where more than one conviction was elevated based on the same evidence).

[4] Our holding may seem to conflict with some cases that have interpreted the language from *Spivey* to mean that double jeopardy under the actual evidence test is not established unless the evidentiary facts used to establish *all* of the elements of one offense are also used to establish *all* the elements of another offense. *See, e.g., Berg v. State*, 45 N.E.3d 506, 510 (Ind. Ct. App. 2015) (holding that actual evidence test was not met where evidentiary facts establishing all the elements of OWI endangering a person did not establish all the elements of OWI); *Ellis v. State*, 29 N.E.3d 792, 798 n.2 (Ind. Ct. App. 2015) (holding that actual evidence test was not met where evidentiary facts establishing all the elements of defendant's conviction for theft did not also establish all the elements of his conviction for attempted theft), *trans. denied*; *Zieman v. State*, 990 N.E.2d 53, 60 (Ind. Ct. App. 2013) (holding that actual evidence test was not met where evidentiary facts establishing all the elements of defendant's conviction for attempted murder did not also establish all the elements of his conviction for resisting law enforcement resulting in serious bodily injury); *see also Garrett*, 992 N.E.2d at 719 ("The actual evidence test is applied to all the elements of both offenses."). While we would welcome clarification of the actual evidence test from our supreme court, we need not address any conflict between our holding and these cases, because we also conclude *infra* that Wadle's convictions also violate the common-law rules against double jeopardy.

actual evidence test.

## II. Common-Law Rules Against Double Jeopardy

In addition to the actual evidence test, Indiana courts have also "long adhered to a series of rules of statutory construction and common law that are often described as double jeopardy, but are not governed by the constitutional test set forth in *Richardson*." *Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind. 2002) (citing *Richardson*, 717 N.E.2d at 56 (Sullivan, J., concurring)).[5] In his concurring opinion in *Richardson*, Justice Sullivan listed five categories of common-law rules that prohibit multiple convictions in certain situations. *Id*. Justice Sullivan's categories were then adopted by the court in *Guyton* as an adjunct to the *Richardson* constitutional tests. *See Guyton*, 771 N.E.2d at 1143.

Included among these categories is one that is applicable here: "'[c]onviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished.'" *Id*. (quoting *Richardson*, 717 N.E.2d at 56). Justice Sullivan's concurring opinion in *Richardson* explained that:

---

[5] Wadle does not specifically argue that his convictions constitute double jeopardy under the *Guyton* common-law double jeopardy rules. But this does not prevent us from analyzing Wadle's claims under *Guyton*. In fact, the defendant in *Guyton* only brought an actual evidence claim. *See* 771 N.E.2d at 1142; *id.* at 1145 (Dickson, J., concurring) (noting that defendant argued only that his convictions violated the actual evidence test)). Moreover, because questions of double jeopardy implicate fundamental rights, our courts routinely address issues of double jeopardy *sua sponte*. See *Whitham v. State*, 49 N.E.3d 162, 168 (Ind. Ct. App. 2015); *see also Logan*, 729 N.E.2d at 136; *Smith*, 881 N.E.2d at 1047.

> [i]n situations where a defendant has been convicted of one crime for engaging in the specified additional behavior or causing the specified additional harm, that behavior or harm cannot also be used as an enhancement of a separate crime; either the enhancement or the separate crime [must be] vacated.

*Richardson*, 717 N.E.2d at 56 (Sullivan, J., concurring).

[20]   Here, the elevation of Wadle's leaving the scene conviction was imposed for the very same behavior or harm as another crime for which Wadle was convicted. That is, the elevation of his conviction for leaving the scene of an accident and his conviction for OWI causing serious bodily injury were both based on the same act of Wadle striking Charles with his car while driving drunk. This violates our common-law prohibitions against double jeopardy.

[21]   The same is true for Wadle's convictions for OWI endangering a person and operating a vehicle with an ACE of 0.08 or more, which were also based on same act of drunken driving. The only evidence that Wadle endangered anyone while driving drunk was when he struck Charles. And the State made no attempt at trial to distinguish the evidence supporting Wadle's conviction for OWI endangering a person from that used to elevate Wadle's conviction for leaving the scene of an accident.[6] Nor did the State make any attempt to

---

[6] The prosecuting attorney argued in closing argument:

> Instead of driving out of the parking lot, [Wadle] backed up, he angled his car and drove over a curb and a median and struck Chuck Woodward twice not once but twice. Jordan Wadle drove his car while intoxicated. He admitted having six beers and a shot of tequila. His blood alcohol concentration was .14. He certainly operated his car in a manner that endangered another person. While he was driving intoxicated he caused seriously bodily injury to Chuck Woodward. He fractured Chuck's skull. He crushed his ribs. Jordan Wadle knowingly failed to

distinguish the evidence supporting the conviction for operating with an ACE of 0.08 or more from that used to elevate Wadle's conviction for leaving the scene of an accident. Accordingly, all of Wadle's convictions for driving while intoxicated must be vacated.

[22] The State claims that Wadle's convictions for leaving the scene and OWI were not based on the same act.[7] The State argues that the OWI convictions were based on Wadle's actions in the parking lot, whereas his conviction for leaving the scene of an accident was based on his act of leaving the parking lot. *See* Appellee's Br. p. 11 ("Wadle committed OWI causing serious bodily injury *before* he left the scene of the accident[.]") (emphasis in original). However, Wadle's conviction for leaving the scene of an accident was *elevated* based on his actions that occurred in the parking lot, and this same act of driving drunk in the parking lot was used to support his convictions for driving while intoxicated. This is why these convictions violate the common-law rules against double jeopardy.

[23] We therefore conclude that Wadle's convictions for Level 3 felony leaving the scene of an accident, Level 5 felony OWI causing serious bodily injury, Level 6

---

stop his vehicle and remain at the scene after he had hit Chuck. He intentionally ran Chuck down with [his] car.

Tr. Vol. 2, p. 75.

[7] The State concedes that Wadle's three convictions for driving drunk, i.e., Level 5 felony OWI causing serious bodily injury, Level 6 felony OWI endangering a person, and Class C misdemeanor operating a vehicle with an ACE of 0.08 or more, constitute double jeopardy because they are all based on a single act of driving while intoxicated. Because we reverse these convictions, however, they no longer present any double jeopardy concerns.

felony OWI endangering a person, and Class A misdemeanor operating a vehicle with an ACE of 0.08 or more are impermissible under Indiana's common-law double jeopardy rules. *See Cross v. State*, 15 N.E.3d 569, 573 (Ind. 2014) (holding that defendant's conviction for carrying a handgun without a permit after a felony conviction and the enhancement of his sentence for possessing a firearm during the commission of a controlled substance offense were both based on evidence that defendant possessed the same handgun and therefore constituted double jeopardy under common-law rules set forth in *Guyton*); *Springfield v. State*, No. 18A-CR-1317, ___ N.E.3d ___, 2018 WL 6816793, at *4 (Ind. Ct. App. Dec. 28, 2018) (holding that elevation of defendant's convictions for possession of cocaine and possession of a narcotic drug, which were elevated based upon defendant's possession of a firearm, violated common-law rules against double jeopardy because the same evidence also formed the basis for defendant's conviction for possession of a firearm by a serious violent felon); *Vennard v. State*, 803 N.E.2d 678, 683 (Ind. Ct. App. 2004) (holding that defendant's convictions for both murder and robbery elevated to a Class A felony violated common-law rules against double jeopardy where the evidence of serious bodily injury was used to elevate the robbery conviction and to support murder conviction), *trans. denied*.

[24] The State, citing *McElroy v. State*, 864 N.E.2d 392 (Ind. Ct. App. 2007), *trans. denied,* claims that Wadle's convictions do not constitute double jeopardy under the common-law rules. In *McElroy*, the defendant was convicted of operating a vehicle with a blood alcohol content of at least 0.10 causing death and failure to

stop after an accident resulting in death. In the defendant's petition for post-conviction relief, he claimed that his trial counsel was ineffective for failing to argue to the sentencing court that his convictions for both crimes were impermissible double jeopardy. On appeal from the denial of his petition for post-conviction relief, a panel of this court held:

> McElroy has not been punished twice for the same act. Rather, he has been punished for one act—causing [the victim]'s death—and a second, sequential act—failing to stop after the accident. And even though failing to stop after an accident is a more serious crime when the accident results in death, *it cannot be said that the crime is enhanced because of any behavior on the defendant's part.* The enhancement is based on the circumstances of the accident, i.e., because a death was involved. This represents a policy decision by our legislature that failing to stop after an accident resulting in death is itself a very serious crime completely separate from whether the defendant caused the victim's death. *See* Ind. Code § 9-26-1-1 (establishing that the duty to stop at the scene of an accident arises when a driver is "involved" in an accident). Therefore, this is not a case where, as Justice Sullivan put it, "a defendant has been convicted of one crime for engaging in the specified additional behavior or causing the specified additional harm" and that behavior or harm has been used as an enhancement of a separate crime.

*Id.* at 398 (quoting *Richardson*, 717 N.E.2d at 56 (Sullivan, J., concurring)).

[25] We find *McElroy* distinguishable. In that case, the defendant was punished for two separate acts: (1) causing the victim's death, and (2) leaving the scene of an accident that resulted in a death, which a serious crime in its own right, without regard to whether the defendant actually caused the death at issue. Here, if we

allowed Wadle's convictions for OWI causing serious bodily injury and leaving the scene after OWI causing serious bodily injury to stand, Wadle would be punished twice for the same act—OWI causing serious bodily injury. That is, he would be punished by virtue of the standalone OWI-causing-serious-bodily-injury conviction, and he would additionally be punished by virtue of the elevation of the failure-to-stop conviction to a Level 3 felony. This would be a textbook violation of the following common-law rule against double jeopardy: "[c]onviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished." *Guyton*, 771 N.E.2d at 1143 (quoting *Richardson*, 717 N.E.2d at 56). Therefore, the two convictions cannot stand. And for the reasons already discussed above, the same rationale requires the setting aside of the convictions for OWI endangering a person and operating a vehicle with an ACE of 0.08 or more.

[26] In summary, under the common-law test adopted in *Guyton*, Wadle's convictions for leaving the scene of an accident (as elevated to a Level 3 felony), OWI causing serious bodily injury, OWI endangering a person, and operating a vehicle with an ACE of 0.08 or more constitute impermissible double jeopardy.

## III. Remedy

[27] When two convictions are determined to constitute double jeopardy, a reviewing court may remedy the violation by reducing either conviction to a less serious form of the same offense, if doing so will eliminate the violation, or by vacating one of the convictions. *Moala v. State*, 969 N.E.2d 1061, 1065 (Ind.

Ct. App. 2012) (citing *Richardson*, 717 N.E.2d at 54). In making the determination of which conviction to vacate, we are mindful of the penal consequences that the trial court found appropriate. *Zieman v. State*, 990 N.E.2d 53, 64 (Ind. Ct. App. 2013).

[28] Here, we reverse Wadle's convictions for OWI causing serious bodily injury, OWI endangering a person, operating a vehicle with an ACE of 0.08 or more, and we remand with instructions that the trial court vacate the judgments of conviction and sentences entered on these counts. This eliminates any double jeopardy issues with these convictions and the conviction for leaving the scene of an accident while keeping Wadle's sentence at sixteen years, with two years suspended to probation. This leaves in place Wadle's conviction and sentence for Level 3 felony leaving the scene of an accident.

[29] Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

Vaidik, C.J., and Crone, J., concur.