**Willie Lee ENGLISH, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 48S00–8907–CR–519.**

Supreme Court of Indiana.

July 25, 1991.

Patrick Murphy, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

Appellant was found guilty of Murder. Although the State originally asked for the death penalty, that request was dropped at

the sentencing hearing. Appellant also was convicted of Criminal Confinement. He received a sentence of sixty (60) years for the conviction of murder and twenty (20) years for the conviction of criminal confinement, the sentences to be served consecutively.

The facts are: Appellant and the victim, Diane English, had been married and recently divorced. On September 15, 1987, appellant called Diane at her office, and shortly thereafter he arrived at the office. Upon his arrival, Diane accompanied him to another part of the office where they engaged in conversation. Vicky Butterfield was in her office when she heard a gunshot and a scream in the hallway. She quickly closed and locked the door of her office. She heard footsteps running down the hall toward her door. The door rattled and appellant then broke open the door splintering it in the process. However, Butterfield was able to thwart his entrance, and appellant left with a gun in his hand.

At that time, Diane rushed into the office of Sonia Lippincott and slammed and locked the door. She stated: "It's Will. He's after me. He's got a gun." Lippincott hid behind a bookcase while Diane hid under some furniture. Lippincott then heard footsteps in the hall. She testified, "And the footsteps stopped in front of the door, outside the door and it was very quiet. There wasn't any sound and suddenly the door just crashed open." She stated that she could hear appellant breathing as he entered the room. Appellant found Diane, and Lippincott heard her cry, "No, Will, no."

In the meantime, Butterfield heard English break into Lippincott's office. Butterfield heard him drag Diane down the hall toward her office while Diane continued to plead, "No, Will." When appellant and Diane were outside Butterfield's door, Diane fell against the door forcing it open. She fell to the floor inside Butterfield's office. Appellant stood in the hall and shot Diane and in doing so stated he was going to kill her. As he aimed the gun at Diane, he said, "Die, bitch, die." Diane was rushed to a hospital but died in surgery. The cause of death was a gunshot wound that passed through her heart.

During the investigation, the police found a note near Diane's body. The note read, "I swear I will kill you right where you sat [sic] if you don't follow me now." A handwriting expert testified that exemplars of appellant's handwriting revealed that he was the author of the note.

Appellant's son testified that on an occasion, either after or during the divorce, appellant had threatened to kill Diane. A friend of appellant also testified that some two months prior to the killing appellant had expressed to him thoughts of killing his wife and two sons.

■ Appellant claims the trial court erred in admitting State's Exhibit No. 26, which was the note found near the decedent's body. Appellant contends there was not a sufficient chain of custody to preserve the integrity of the exhibit. Kevin First, the lab director for the Anderson Police Department, testified he obtained the note at the scene of the killing on September 15, 1987. On March 1, 1988, he gave Detective Lloyd Brown a photocopy of the note while retaining the original. On April 1, 1988, First gave the original to Brown. Brown sent the original to the State Police Headquarters in Indianapolis for comparison with known handwriting exemplars of appellant. Questioned document examiner Dianne Tolliver testified that she received the note and the exemplars from Detective Brown on April 8, 1988. At trial, First, Brown, and Tolliver each identified the note.

■ Although a period of time elapsed from the time First picked up the note at the scene of the crime and the testing of the note at State Police Headquarters, the chances of any tampering or substitution of the note are remote. There is no evidence that from the time it was picked up at the scene of the crime until it was tested that the note was ever out of police custody. Although the rule of chain of custody is quite strict concerning fungible goods that are difficult to identify, the rule is less stringent on items that are readily identifiable at any given time.

■ This is certainly true of the note in question. Its distinctive qualities allowed each of the witnesses who handled the note to readily identify it upon sight. The fact that the note passed through three custodians and still was readily identifiable does not raise a sufficient possibility of tampering to render it inadmissible. *Murphy v. State* (1990), Ind., 555 N.E.2d 127. The State need only negate any substantial likelihood of tampering, loss, substitution, or mistake. *Sylvester v. State* (1990), Ind., 549 N.E.2d 37; *Woods v. State* (1989), Ind., 547 N.E.2d 772. We see nothing in this record to indicate any evidence of tampering with the exhibit or any likelihood that such existed. It was not error for the trial court to admit the exhibit into evidence.

■ Appellant claims the trial court erred in failing to consider mitigating circumstances in rendering the sentence. Appellant takes the position that he has no memory of the event and that he was emotionally upset because of his belief that the victim had been unfaithful during their marriage. He claims this was a highly emotional situation which was unlikely to recur and that such mitigating factors should have been used to reduce his sentence.

However, as stated above, this was not a situation of sudden discovery. A divorce had been granted and appellant's knowledge or beliefs had existed for some time, during which time he had threatened to kill not only his wife but his children. On the day of the victim's attack, he came armed with a weapon and a note stating his intentions. Under these circumstances, it hardly can be stated that appellant's claim of mitigating circumstances is valid. The trial court did not err in the imposition of the sentence. *See Wilkins v. State* (1986), Ind., 500 N.E.2d 747; *Durham v. State* (1987), Ind.App., 510 N.E.2d 202.

■ Appellant contends the prosecuting attorney was guilty of misconduct when during final argument he characterized appellant as "experienced" due to his prior conviction for robbery. Appellant's prior record was in evidence and the prosecutor was responding to appellant's claim that the victim had provoked his actions. The prosecutor was hypothesizing to the jury that you hardly could expect the victim to deliberately taunt a person who had been convicted of robbery. The prosecutor's comment did not inject anything that was not in evidence nor did it go beyond reasonable comment on the evidence which had been submitted to the jury. We see no reversible error here. *See Roberts v. State* (1981), Ind.App., 419 N.E.2d 803.

Appellant claims that by permitting the State to "death qualify" the jurors, he was required to go to trial before a jury which would be predisposed to finding him guilty. This argument has been rejected by the Supreme Court of the United States and by this Court. *See Lockhart v. McCree* (1986), 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137; *Witherspoon v. Illinois* (1968), 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776; *Hammers v. State* (1987), Ind., 502 N.E.2d 1339; *Thomas v. State* (1984), Ind., 459 N.E.2d 373; and *Fielden v. State* (1982), Ind., 437 N.E.2d 986.

■ Appellant contends the trial court erred in refusing to give his tendered instruction regarding manslaughter. The trial court in fact did give a portion of appellant's manslaughter instruction. The instruction consisted of two paragraphs the first of which fully covered the subject of manslaughter and was given by the trial court. The second paragraph was nothing more than an embellishment upon the first. We find that the jury was properly instructed concerning manslaughter, and the giving of the last paragraph of appellant's tendered instruction would have been repetitious. Thus its striking was not reversible error. *See Canaan v. State* (1989), Ind., 541 N.E.2d 894, *cert. denied,* — U.S. ——, 111 S.Ct. 230, 112 L.Ed.2d 185.

■ Appellant claims the trial court erred in not providing defense counsel with discoverable material. Appellant's counsel asked for and received permission to examine police reports that were in the State's possession. However, he asked for copies of these reports which were somewhat voluminous and that request was denied.

The Court of Appeals has addressed this question in the case of *Dockery v. State* (1987), Ind.App., 504 N.E.2d 291. There, under similar circumstances, the Court of Appeals held that inasmuch as the defense was permitted to see the requested evidence, it was not reversible error to refuse to furnish them with copies. We cannot say in the instant case that the trial court abused its discretion in refusing to require the State to furnish copies of voluminous records to which counsel had access.

Appellant contends the trial court erred in admitting evidence concerning his general malice toward his sons and the victim. He claims that because his threats to kill his wife and children were made a month before his attack on the victim it was too remote to be used as evidence against him. Evidence of prior threats conveyed to a third person are admissible to show intent. *Drollinger v. State* (1980), 274 Ind. 5, 408 N.E.2d 1228. In *Doty v. State* (1981), Ind., 422 N.E.2d 653, this Court held that threats which had been made two months prior to the attack were not too remote. The trial court did not err in admitting this evidence.

The trial court is affirmed.

SHEPARD, C.J., and DICKSON and KRAHULIK, JJ., concur.

DeBRULER, J., concurs in result.