902 N.E.2d 280 (2009)
Artillius WASHINGTON, Appellant-Defendant,
v.
STATE of Indiana, Appellee-Plaintiff.
No. 79A02-0806-CR-500.
Court of Appeals of Indiana.
March 6, 2009.
*284 Teri A. Cummins, The Sandy Law Firm Lafayette, IN, Attorney for Appellant.
Gregory F. Zoeller, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

OPINION
BRADFORD, Judge.
Following a jury trial, Appellant-Defendant Artillius Washington appeals his conviction for Class B felony Dealing in Cocaine.[1] Washington raises the following issues on appeal:
1. Whether the trial court abused its discretion and violated his Sixth Amendment right to the counsel of his choice by denying his request for a continuance on the morning of trial for the purpose of hiring private counsel;
2. Whether the evidence was sufficient to support his convictions;
3. Whether the deputy prosecuting attorney committed misconduct;
4. Whether the trial court abused its discretion in sentencing Washington;
5. Whether Washington's sentence is inappropriate; and
6. Whether the trial court's sentencing statement erroneously states that Washington was sentenced to eighteen years for his conviction of Class D felony possession of cocaine.
We affirm in part and remand to the trial court with instructions.

FACTS AND PROCEDURAL HISTORY
On November 4, 2004, Washington went to Tecumseh Middle School in Lafayette to recover his Majestic brand athletic jacket, which his nephew, J.R.,[2] had worn to school because of cold weather. Washington indicated that the jacket was his and that he was there to recover it and the keys that he had left in one of the pockets. While waiting for his jacket, Lafayette Police Officer James Quesenbery stated that "Washington was very anxious. He wanted the jacket quickly and ... was concerned why it was taking so long to get... the jacket down to him." Tr. pp. 190-91.
J.R.'s teacher, Amy Howard, received notification that J.R.'s uncle was in the office requesting his jacket. Howard observed that J.R., who was emotionally disabled, was wearing the jacket and that it was four or five sizes too big for him. Howard asked J.R. if the jacket belonged to his uncle. After Howard inquired about the jacket, J.R. pulled a bag containing "crystal looking rocks" in individual plastic bags out of one of the jacket pockets. Tr. p. 93. Howard "immediate[ly] thought drugs," so she took the drugs and left her classroom to find John Townsend, the off-duty Lafayette police officer who was working at the school that day. Tr. p. 93. Upon discovery of the drugs, J.R. appeared to be frightened, and he told Officer Townsend that the drugs were not his. J.R. later told Officer Quesenbery that the jacket belonged to Washington.
After speaking with J.R., Officer Quesenbery questioned Washington about the drugs found in the jacket pocket. Washington avoided eye contact with Officer Quesenbery and stated that "he couldn't believe his 12 year old nephew was into drugs." Tr. p. 225. Officer Quesenbery informed Washington that J.R. would be *285 released to a family member and sent home from school. Washington lied to Officer Quesenbery, stating that J.R.'s mother was currently in surgery and would not be able to pick him up. Officer Quesenbery described Washington's behavior as being evasive and deceptive. Soon after Washington left school property, J.R.'s mother arrived at the school.
On August 30, 2006, Washington was charged with Count 1, Dealing in Cocaine, Count 2, Possession of Cocaine, Count 3, Dealing in Cocaine, and Count 4, Possession of Cocaine. Counts 1 and 2 were unrelated to the events that occurred at Tecumseh Middle School on November, 4, 2004. On June 1, 2007, the trial court granted Washington's motion for a continuance of his upcoming jury trial scheduled for June 19, 2007. Washington's trial was rescheduled for September, 11, 2007. On September 7, 2007, the trial court granted the parties' agreed request for a continuance of Washington's upcoming jury trial, and rescheduled the trial for December 4, 2007. On November 16, 2007, the trial court granted the parties' second agreed request for a continuance of Washington's upcoming jury trial. The trial court rescheduled Washington's trial for January 22, 2008. On January 18, 2008, the trial court granted the parties' third request for a continuance of the upcoming jury trial, and rescheduled the trial for February 19, 2008. On February 19, 2008, Washington again requested a continuance of his jury trial, this time for the purpose of hiring private counsel. The trial court denied Washington's request, and the matter proceeded to trial.
At trial, Detective Brian Brown of the Lafayette Police Department, who was a member of the Tippecanoe County Drug Force from October of 2001 to January of 2008, testified to some common characteristics or indicators of dealing in narcotics. Detective Brown stated that some key indicators of dealing in narcotics would be:
[T]he sizes that the rocks of crack cocaine were cut up into and also the numerous baggie corners that are on the inside of this. Baggie corners are a typical packaging agent for drug dealers, whether it be methamphetamine, crack cocaine, cocaine, sometimes even pharmaceutical medication. But corner baggies, typically knotted, are a common way to transport, hang on to and distribute narcotics.
Tr. pp. 175-76. The evidence established that the bag of drugs recovered from Washington's jacket pocket contained nine rocks of crack cocaine that were individually packaged in "baggie corners," which Detective Brown believed to be indicative of an individual who was dealing in narcotics.
On February 20, 2008, the jury found Washington not guilty of Counts 1 and 2, but guilty of Counts 3 and 4, relating to the events at Tecumseh Middle School on November 4, 2004. Following a sentencing hearing on April 25, 2008, the trial court merged Washington's conviction for Count 4 into his conviction for Count 3 and sentenced Washington to eighteen years of incarceration in the Department of Correction. Washington now appeals.

DISCUSSION AND DECISION

I. Denial of Continuance to Hire Private Counsel
Washington contends that the trial court abused its discretion and violated his Sixth Amendment right to the counsel of his choice when it denied his request for a continuance on the day of trial. Initially, we observe that continuances are not favored and as a general rule should be granted only when the continuance is necessary in the furtherance of justice on the *286 showing of good cause. Welch v. State, 564 N.E.2d 525, 528 (Ind.Ct.App.1990).

A. Whether the Trial Court Abused its Discretion in Denying Washington's Request for a Continuance.
Washington claims that the trial court abused its discretion in denying his request for a continuance on the morning of trial. It is well-established that the determination of whether to grant a defendant's request for a continuance for the purpose of hiring private counsel immediately before trial is a matter within the sound discretion of the trial court. Gilliam v. State, 650 N.E.2d 45, 50 (Ind.Ct. App.1995), trans. denied. The decision of the trial court will be reversed only for an abuse of that discretion. Stafford v. State, 890 N.E.2d 744, 750 (Ind.Ct.App.2008). An abuse of discretion occurs only where the decision is clearly against the logic and effect of the facts and circumstances. Id. We will not conclude that the trial court abused its discretion unless the defendant can demonstrate prejudice as a result of the trial court's denial of the motion for a continuance. Id. "`Motions for continuance to hire a new lawyer made on the morning of trial are particularly disfavored because granting them causes substantial loss of time for jurors, witnesses, lawyers, and the court.'" Gilliam, 650 N.E.2d at 51 (quoting Roberts v. State, 500 N.E.2d 197, 199 (Ind.1986)).
On the day of his trial, Washington requested a continuance for the purpose of hiring private counsel. Washington, however, did not appear personally to make his request and provided no information concerning why he waited until the morning of trial to notify the trial court of his desire to retain new counsel. Washington had previously requested one continuance, and had also, in agreement with the State, filed three joint requests for continuances, all of which had been granted by the trial court. Washington failed to notify the court, with any certainty, of the identity of his allegedly hired private counsel, and, as of the morning of trial, no attorney, other than his previously assigned public defender, had filed an appearance on Washington's behalf. In addition, Washington's public defender was prepared to, and did represent Washington at trial. Under these circumstances, Washington has not shown that his right to a fair trial was prejudiced. Therefore, we conclude that the trial court did not abuse its discretion in denying Washington's request for a continuance on the morning of trial.

B. Whether the Trial Court's Denial of Washington's Request for a Continuance Amounted to a Violation of Washington's Constitutional Rights.
Washington also claims that the trial court violated his constitutional right to the counsel of his choice in denying his request for a continuance on the morning of trial. The Sixth Amendment guarantees a criminal defendant's right "to have the Assistance of Counsel for his defence." U.S. CONST., amend. VI. A corollary of this right is the right to choose counsel when a defendant is financially able to do so, and a defendant should be afforded a fair opportunity to secure counsel of his own choice. Lewis v. State, 730 N.E.2d 686, 688-89 (Ind.2000); Barham v. State, 641 N.E.2d 79, 82 (Ind.Ct.App.1994). The right to privately retain counsel of choice derives from a defendant's right to determine the type of defense he wishes to present. Barham, 641 N.E.2d at 82. "In criminal cases, the right to retain counsel of choice becomes a question of fundamental fairness, the denial of which may rise to a level of constitutional violation." Id. A conviction attained when a court "unreasonably *287 or arbitrarily interferes with an accused['s] right to retain counsel of his choice ... cannot stand, irrespective of whether the defendant has been prejudiced." U.S. v. Collins, 920 F.2d 619, 625 (10th Cir.1990), as adopted by Barham, 641 N.E.2d at 82. However, it is well-settled that the right to counsel of choice must be exercised at "the appropriate stage of the proceedings." Lewis, 730 N.E.2d at 689 (quoting Parr v. State, 504 N.E.2d 1014, 1016 (Ind.1987)).
In claiming that the trial court violated his right to the counsel of his choice, Washington relies upon this court's conclusion in Barham, that the trial court "interfered unreasonably and arbitrarily with [Defendant's] right to retain counsel of his choice by denying his private counsel's appearance." 641 N.E.2d at 84-85. In Barham, this court concluded that the trial court interfered unreasonably and arbitrarily with the defendant's right to retain counsel of his choice by denying his private counsel's appearance and request for a continuance five days before trial. Id. at 81, 84-85. However, Barham can easily be distinguished from the instant matter. For example, to the extent that Washington claims that like the defendant in Barham, he had only requested one prior continuance, we observe that the evidence establishes that in addition to the one prior requested continuance, Washington had, by agreement with the State, requested three additional continuances. More importantly, unlike the facts presented in Barham, the private counsel allegedly retained by Washington had not contacted or appeared before the court. In addition, the facts in the instant matter establish that Washington, who was not present at trial when his appointed counsel requested the continuance, had not indicated at any prior point in the proceeding that he wished to hire private counsel. We conclude that, in waiting until the morning of trial to request a continuance for the purpose of hiring private counsel, Washington failed to exercise his right to hire the counsel of his choice at the appropriate stage of the proceedings, and that as a result, the trial court did not interfere unreasonably or arbitrarily with Washington's right to hire the counsel of his choice. Therefore, the trial court's denial of Washington's request for a continuance on the morning of trial did not violate Washington's constitutional right to counsel.
Having concluded that it was within the discretion of the trial court to deny a last-minute request for a continuance for the purpose of hiring new counsel and that the trial court's denial did not violate Washington's Sixth Amendment right to the counsel of his choice, we affirm the trial court's denial of Washington's request for a continuance on the morning of trial.

II. Sufficiency of the Evidence
Washington next contends that the evidence presented at trial was insufficient to prove that he possessed cocaine with the intent to deliver.
Upon a challenge to the sufficiency of evidence to support a conviction, a reviewing court does not reweigh the evidence or judge the credibility of the witnesses, and respects the jury's exclusive province to weigh conflicting evidence. We have often emphasized that appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. Expressed another way, we have stated that appellate courts must affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt.
*288 McHenry v. State, 820 N.E.2d 124, 126 (Ind.2005) (citations and quotations and omitted). The uncorroborated testimony of one witness is sufficient to sustain a conviction. Wray v. State, 547 N.E.2d 1062, 1068 (Ind.1989). Furthermore, "[w]here the evidence of guilt is essentially circumstantial, the question for the reviewing court is whether reasonable minds could reach the inferences drawn by the jury; if so, there is sufficient evidence." Bruce v. State, 268 Ind. 180, 253, 375 N.E.2d 1042, 1080 (1978).
In order to convict Washington, the State must prove that he possessed cocaine with the intent to deliver. Indiana Code § 35-48-4-1. A conviction for possession of contraband may rest upon proof of either actual or constructive possession. Macklin v. State, 701 N.E.2d 1247, 1251 (Ind.Ct.App.1998). Constructive possession is the actual knowledge of the presence and illegal character of the contraband and the intent and capability to maintain dominion and control over it. Id. In cases where the defendant has exclusive possession over the premises on which the contraband is found, an inference is permitted that the defendant knew of its presence and was capable of controlling it. Id. When possession in non-exclusive, however, additional circumstances must be present to support the inference that the defendant intended to maintain dominion and control over the contraband and that the defendant had actual knowledge of its presence and illegal character. Id. Such additional circumstances include, but are not limited to, the following: (1) incriminating statements by the defendant, (2) attempted flight or furtive gestures, (3) location of substances like drugs in settings that suggest manufacturing, (4) proximity of the contraband to the defendant, (5) location of the contraband within the defendant's plain view, and (6) the mingling of the contraband with other items owned by the defendant. Henderson v. State, 715 N.E.2d 833, 836 (Ind.1999).
Here, possession was non-exclusive, so we consider whether any additional circumstances support the jury's determination that Washington possessed the cocaine with the intent to deliver. We observe that two of the circumstances discussed in Henderson, i.e., incriminating statements made by Washington and the mingling of the contraband with other items owned by Washington, are applicable. With respect to Washington's possession of the jacket and the drugs that were found in the jacket pocket, the evidence establishes that upon arriving at Tecumseh Middle School, Washington indicated that he was there to recover his jacket, which his nephew, J.R., had worn to school that morning. Washington was very anxious, and he became concerned when he believed that it was taking too long to have his jacket sent to the office. Officer Quesenbery testified that Washington behaved in an evasive and deceptive manner after being informed that cocaine had been found in the jacket pocket. For instance, Washington avoided eye contact with Officer Quesenbery, he attempted to shift the blame for the cocaine possession to his twelve-year-old nephew, and he lied to Officer Quesenbery regarding whether J.R.'s mother was able to pick J.R. up from the school. Additionally, J.R. told Officer Townsend that the cocaine was not his and admitted that the jacket belonged to Washington. We conclude that this evidence was such that reasonable minds could reach the inference drawn by the jury that Washington had actual knowledge of the presence and illegal character of the cocaine, as well as the intent and capability to maintain dominion and control over it. Therefore, the evidence was sufficient to prove that Washington constructively possessed the cocaine.
*289 Furthermore, with respect to Washington's intent to deliver the cocaine, the evidence establishes that the bag of drugs recovered from Washington's jacket pocket contained nine rocks of crack cocaine that were individually packaged in "baggie corners." Detective Brown testified that "baggie corners" are a typical packaging agent for drug dealers, and that they are a common way to transport, store, and distribute narcotics. Detective Brown further testified that he believed the packaging of the nine rocks of crack cocaine found in Washington's jacket was indicative of an individual who was dealing in narcotics. We conclude that this evidence was such that reasonable minds could reach the inference drawn by the jury that Washington intended to deliver the cocaine. Accordingly, there was sufficient evidence to support Washington's conviction for dealing in cocaine.

III. Prosecutorial Misconduct
Washington next contends that the deputy prosecuting attorney committed misconduct in his closing argument by disparaging Washington's counsel, stating that Washington's counsel was unethical, inappropriate, ignorant, and improper. The remarks made by the deputy prosecuting attorney about which Washington complains are as follows:
Let me first of allby saying what we say isn't evidence. Thank God it's not because what [Defense Counsel] did is inappropriate. It's unethical. Characterizing the evidence. This is how it is. That's not how it is. He speaks out of ignorance. Ignorance. He wants you to think that's how it is. Ladies and gentlemen, I have worked in the prosecutor's office and with law enforcement officers and that's not how it is. How he described it is not how it works.... And he has done exactly what defense attorneys do, is classic misdirection.... Blame the police. He even went after me. Blame the prosecutor. Hehe wants me to do your job.... The only evidence you had is that he did it.... No other evidence.... What he said is offensive. It's offensive what he says.... These guys are the experts, not him. It's improper for him to characterize what the evidence is. These guys know what they're doing.... We have trials like this all the time. I could get just as improper and I get jury verdicts returned all the time on this very evidence. All the time. Guilty. Because that's what the evidence shows and that's all you have.... These guys are experts. They're specialists. Don't do their job. Don't do my job. But certainly don't let this man go free. Because the evidence shows he's guilty and all the misdirection in the world will not let this man off.... This guy, this expert told you what was in the jacket was prepared for buying. He says there is no dealing. He speaks of ignorance. There was no dealing because it's possession with intent to deal. He didn't want to get that jacket because he wanted to get the keys out. He wanted his jacket ... It's actual constructive possession and what was in there was evidence of dealing. And this man told you as an expert. It's packaged to deal.... It's possession with intent. So out of ignorance he says there is no possession, there's no dealing on that date. That's not what he's charged with. He's charged with possession with the intent to deal.
Tr. pp. 403-406.
Generally, in order to properly preserve a claim of prosecutorial misconduct for appeal, a defendant must not only raise a contemporaneous objection, he must also request an admonishment and, if the admonishment is not given or is insufficient *290 to cure the error, then he must request a mistrial. Flowers v. State, 738 N.E.2d 1051, 1058 (Ind.2000). Where a defendant fails to make an objection to the allegedly improper comments, defendant fails to preserve any claim of prosecutorial misconduct for appellate review. Dumas v. State, 803 N.E.2d 1113, 1117 (Ind.2004). However, waiver notwithstanding, a defendant may still bring a claim for prosecutorial misconduct on appeal if he asserts fundament error. See Watkins v. State, 766 N.E.2d 18, 25 (Ind.Ct.App.2002) (stating that the prosecutorial misconduct may amount to fundamental error), trans. denied.
Initially, we note that in our view, the magnitude of the deputy prosecuting attorney's statements disparaging defense counsel during the State's closing argument was uninvited by any comment made by defense counsel. We also note that the deputy prosecuting attorney's behavior was clearly unprofessional and unacceptable. Even more disturbing was the deputy prosecuting attorney's statement that: "I could get just as improper and I get jury verdicts returned all the time on this very evidence. All the time. Guilty." Tr. p. 405. It is the court's belief that upon reflection, the deputy prosecuting attorney will recognize that such behavior has no place in the practice of law. These types of remarks are equally unpersuasive as they are unconvincing as is underscored by Washington's acquittal on Counts 1 and 2. We conclude that the deputy prosecuting attorney's unprofessional conduct amounted to prosecutorial misconduct. Because Washington did not object to these statements at trial, we must examine these statements in the context of whether the deputy prosecuting attorney's misconduct amounted to fundamental error.
In order for prosecutorial misconduct to constitute fundamental error, the misconduct must constitute a clearly blatant violation of basic and elementary principles of due process, present an undeniable and substantial potential for harm, and make a fair trial impossible. Schmidt v. State, 816 N.E.2d 925, 944 (Ind.Ct.App. 2004), trans. denied. Additionally, the alleged misconduct must have subjected the defendant to grave peril and had a probable persuasive effect on the jury's decision. Watkins, 766 N.E.2d at 25. "The gravity of the peril turns on the probable persuasive effect of the misconduct on the jury's decision, not on the degree of impropriety of the conduct." Id. at 25-26. In judging the propriety of a prosecutor's remarks, the court considers the statements in the context of the argument as a whole. Weis v. State, 825 N.E.2d 896, 904 (Ind.Ct.App. 2005).
Washington claims that the act of making disparaging statements about opposing counsel during closing arguments amounts to per se fundamental error because such comments improperly alter how a jury perceives the attorney. (Appellant's Br. 19) Washington, however, presents no authority supporting this claim, and we observe that Indiana authority suggests otherwise. See Robinson v. State, 693 N.E.2d 548, 552 (Ind.1998) (holding that allegedly disparaging comments about defense counsel made by the prosecutor during closing argument did not amount to fundamental error). Therefore, in order to determine whether the deputy prosecuting attorney's misconduct amounted to fundamental error, we must consider the probable persuasive effect of the misconduct on the jury's decision.
Here, Washington has made no specific showing that the deputy prosecuting attorney's comments likely had any effect on the jury that prejudiced him. The record reveals that almost all of the inappropriate comments made by the deputy *291 prosecuting attorney related to Counts 1 and 2, the charges for which Washington was acquitted. Therefore, to the extent that the deputy prosecuting attorney's inappropriate statements had any effect on the jury, such effect most likely was in Washington's favor. Thus, Washington has failed to show how such comments likely had any negative effect on the jury with respect to the merits of his case or denied him a fair trial. Moreover, because Washington did not specifically challenge the deputy prosecuting attorney's most troubling statement seemingly relating to Counts 1 and 2 inferring that other juries return guilty verdicts on similar evidence, we conclude that such statement was harmless in light of the jury's acquittal of Washington on these counts. We are further confident in this conclusion due to the strength of the evidence relating to Counts 3 and 4 upon which Washington was convicted.
Additionally, the trial court specifically instructed the jury, "When the evidence is completed, the attorneys may make final arguments. These final arguments are not evidence. The attorneys are permitted to characterize the evidence, discuss the law and attempt to persuade you to a particular verdict. You may accept or reject those arguments as you see fit." Appellant's App. p. 55. In light of the trial court's instruction that arguments made my attorneys are not evidence and that they jury may accept or reject those arguments as they see fit, and because Washington has failed to show that the deputy prosecuting attorney's comments likely had any negative effect on the jury, we conclude that although the deputy prosecuting attorney's comments amounted to prosecutorial misconduct, such misconduct did not amount to fundamental error. Thus, Washington's challenge on this ground must fail.

IV. Challenges to Sentence
Washington last contends that the trial court abused its discretion in sentencing him, that his sentence is inappropriate, and that the sentencing statement erroneously states that he was sentenced to eighteen years of incarceration for his Class D felony possession of cocaine conviction.

A. Whether the Trial Court Considered Improper Aggravators in Sentencing Washington.
Washington claims that the trial court considered an improper aggravator in determining his sentence. Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. Anglemyer v. State, 868 N.E.2d 482, 490 (Ind.2007), modified on other grounds on reh'g, 875 N.E.2d 218 (Ind.2007). "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable probable, and actual deductions to be drawn therefrom." Id. (quotation omitted).
Here, Washington claims that the trial court abused its discretion in considering Detective Brown's testimony regarding his alleged, but uncharged illegal conduct, specifically cocaine dealing, as an aggravating factor at sentencing. However, long-standing Indiana precedent establishes that trial courts may consider previous criminal activity, even though uncharged, in the determination of aggravating circumstances at sentencing. Durham v. State, 510 N.E.2d 202, 205 (Ind.Ct. App.1987); Mahla v. State, 496 N.E.2d 568, 575 (Ind.1986). Therefore, the trial court did not abuse its discretion in considering Detective Brown's testimony regarding Washington's uncharged criminal conduct at sentencing.

*292 B. Whether Washington's Sentence is Inappropriate in Light of the Nature of His Offense and His Character.
Washington also challenges his eighteen-year sentence by claiming it is inappropriate. Indiana Appellate Rule 7(B) provides that "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden of persuading us that his sentence is inappropriate. Sanchez v. State, 891 N.E.2d 174, 176 (Ind.Ct.App.2008).
Washington claims that his sentence is inappropriate in light of the nature of his offense because the nature of his offense is not overly egregious. We disagree. Washington placed 2.10 grams of crack cocaine divided into nine separate rocks, packaged for sale, in the pocket of a jacket which he left accessible to his emotionally disabled twelve-year-old nephew. Washington's nephew, seemingly unaware of the drugs in the jacket pocket, wore the jacket to school. Washington then went to the school to retrieve the jacket, at which time the drugs were discovered. When questioned about the crack cocaine, Washington exhibited evasive and deceptive behavior. Furthermore, he lied to police and even tried to shift the blame for the drugs to his twelve-year-old nephew.
With regard to his character, Washington claims that his character has shown marked improvement since the date of his offense. The evidence established, however, that Washington's criminal history included prior convictions of dealing in cocaine, furnishing alcohol to a minor, and operating while suspended. Washington also had a Class C felony battery charge pending against him at the time of sentencing for the instant matter. In addition, Washington admitted his previous association with the Vice Lords, a criminal organization. Washington claims that his love for and interaction with his daughters illustrates his good character. However, although his seemingly strong relationship with his daughters is to be admired, his character also indicates a disregard for the health and safety of the children around him, which was exhibited by his leaving drugs in a location accessible to children. We cannot say that Washington's eighteen-year sentence is inappropriate in light of these circumstances.

C. Whether the Sentencing Order Erroneously States that Washington was Sentenced to Eighteen Years of Incarceration on Count IV, a Class D Felony.
Washington also claims that the sentencing order erroneously states that he was sentenced to eighteen years for his Class D felony possession of cocaine conviction. Indiana Code section 35-50-2-7 provides that a person who commits a Class D felony shall be imprisoned for no more than three years. Here, the trial court merged Washington's possession of cocaine conviction into his Class B felony dealing in cocaine conviction. Therefore, to the extent that the trial court's sentencing statement reads that Washington was convicted of and sentenced to eighteen years for Class D felony possession of cocaine, we remand this matter to the trial court for modification of the sentencing statement to reflect that Washington was convicted of and sentenced for only Class B felony dealing in cocaine.

CONCLUSION
In sum, we conclude that the trial court neither abused its discretion nor violated Washington's Sixth Amendment right to the counsel of his choice in denying Washington's request for a continuance on the *293 morning of trial for the purpose of hiring private counsel, that the evidence presented at trial was sufficient to prove Washington's convictions, and that the deputy prosecuting attorney's comments during closing argument did not amount to fundamental error. Additionally, we conclude that Washington's sentence was appropriate and that the trial court neither abused its discretion nor erred in sentencing Washington, except to the extent that the trial court's sentencing statement should be modified to clarify that Washington was convicted of and sentenced for only Class B felony dealing in cocaine.
The judgment of the trial court is affirmed in part and remanded to the trial court with instructions.
FRIEDLANDER, J., and MAY, J., concur.
NOTES
[1] Indiana Code § 35-48-4-1 (2004).
[2] We note that J.R. is not Washington's biological nephew, but rather is a close family friend whom he refers to as his nephew.