## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 07 2016, 8:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark A. Thoma
Deputy Public Defender
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Mario D. Bell,

*Appellant-Defendant,*

*v.*

State of Indiana,

*Appellee-Plaintiff.*

June 7, 2016

Court of Appeals Case No.
02A05-1510-CR-1622

Appeal from the Allen Superior
Court

The Hon. Frances C. Gull, Judge

Trial Court Cause No. 02D05-1412-
F4-42

**Bradford, Judge.**

# Case Summary

[1] In November of 2014, Fort Wayne Police Detective John Greenlee stopped a car driven by Appellant-Defendant Mario Bell because Bell was driving without

his headlights when conditions warranted it. Detective Greenlee determined that the car Bell drove was not registered to him, and, when Detective Marin Grooms arrived, the detective decided to have Bell exit the car. When Detective Grooms touched Bell on the shoulder, Bell ran off with the Detectives in pursuit.

[2] Detective Grooms caught up to Bell and tased him twice, at which point Bell appeared to have a seizure. Detective Greenlee handcuffed Bell in the front while medical assistance was summoned. Soon, however, Bell came to and attempted to push himself up off of the ground while three police officers pushed back. Eventually, six officers became involved in subduing Bell, who was thrashing wildly, kicking, and attempting to obtain one officer's weapon, among other things. When Bell was finally brought under control, a bag of marijuana was found in his pocket. Meanwhile, a handgun had been found protruding from under the driver's seat in the car Bell had been driving.

[3] Appellee-Plaintiff the State charged Bell with Level 4 felony possession of a firearm by a serious violent felon ("SVF"), Level 6 felony resisting law enforcement, Level 6 felony theft, Class A misdemeanor resisting law enforcement, and Class B misdemeanor marijuana possession. A jury found Bell guilty as charged. The trial court sentenced Bell to an aggregate term of eight years of incarceration. Bell contends that the State produced insufficient evidence to sustain his convictions for SVF and Level 6 felony resisting law enforcement. Because we disagree, we affirm.

# Facts and Procedural History

[4] At approximately 5:00 p.m. on November 23, 2014, Detective Greenlee was on patrol when he noticed a car in front of him without its headlights on. Because visibility was poor, Detective Greenlee decided to stop the car and, to that end, activated his lights. Detective Greenlee first engaged Bell, who was the only person in the car, through the passenger-side window and noticed that Bell's hands were shaking. Detective Greenlee also noticed that Bell was attempting to hurry the traffic stop along. Detective Greenlee identified Bell and determined that the car was not registered in Bell's name. As it happened, Bell had borrowed the car from Charlene Woods, his sister. Detective Grooms soon arrived to assist Detective Greenlee.

[5] Detectives Grooms and Greenlee consulted with each other, re-approached the car, and had Bell exit it. Detective Greenlee told Bell to speak with Detective Grooms, and, when Detective Grooms put his hand on Bell's shoulder and said, "I need you to stand right here[,]" Bell ran. Tr. p. 244. The detectives pursued, with Detective Grooms catching up to Bell as he hopped a fence. Detective Grooms fired his taser and administered a five-second charge to Bell, who was initially incapacitated but soon attempted to rise. By this time, Detective Greenlee had arrived and Detective Grooms tased Bell again so that Detective Greenlee would have time to climb over the fence. At this point, Detective Grooms thought that Bell might be suffering a seizure, and Detective Greenlee observed that Bell "didn't look like a person who [he'd] tased before[.]" Tr. p. 246. Detective Greenlee handcuffed Bell in the front out of

concerns for Bell's safety, and Detective Grooms called for immediate medical assistance.

[6] Detective Greenlee rolled Bell onto his side, and, approximately forty-five seconds later, Bell started to regain consciousness. By this time, additional back-up had arrived. Although he was told repeatedly to "stay down," Bell used both of his hands to push up from the ground, despite being pushed down by three police officers. Tr. p. 248. Bell was "thrashing violently" and forcibly resisting the officers' efforts to keep him on the ground and handcuff him behind his back. Tr. p. 128.

[7] Eventually, six officers joined in the attempt to subdue Bell, using various techniques to gain Bell's compliance. Detective Grooms delivered three knee strikes to Bell's thigh, which resulted in some temporary compliance. Officer John Drummer kicked Bell in the face after Bell grabbed his ankles and attempted to grab his gun. Eventually, the officers were able to force Bell's arms behind his back and handcuff him. Officer Drummer found a small plastic bag in Bell's right front pants pocket that contained marijuana. At one point during the melee with Bell, Detective Grooms's foot slid in the mud and out from underneath him. Detective Grooms suffered a torn meniscus and some debris in his knee, which required surgery.

[8] Meanwhile, Detective George Nicklow arrived and, while other officers struggled to take Bell into custody, secured the car Bell had been driving. Detective Nicklow found a Smith and Wesson handgun in plain view

protruding from underneath the driver's seat. It was later determined that the handgun had been stolen from John Mosely's apartment some time not long before May 30, 2014.

On November 26, 2014, the State charged Bell with Level 4 felony SVF, Level 6 felony resisting law enforcement, Level 6 felony theft, Class A misdemeanor resisting law enforcement, and Class B misdemeanor marijuana possession. On May 7, 2015, a jury found Bell guilty as charged. On June 9, 2015, the trial court sentenced Bell to eight years of incarceration for SVF, two years each for Level 6 felony resisting law enforcement and theft, one year for Class A misdemeanor resisting law enforcement, and 180 days for marijuana possession, all sentences to be served concurrently.

# Discussion and Decision

## Sufficiency of the Evidence

Bell contends that the State failed to produce sufficient evidence to sustain his convictions for SVF and resisting law enforcement. When reviewing the sufficiency of the evidence, we neither weigh the evidence nor resolve questions of credibility. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995). We look only to the evidence of probative value and the reasonable inferences to be drawn therefrom which support the verdict. *Id*. If from that viewpoint there is evidence of probative value from which a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt, we will affirm the conviction. *Spangler v. State*, 607 N.E.2d 720, 724 (Ind. 1993).

# I. SVF

Pursuant to Indiana Code section 35-47-4-5(c), "[a] serious violent felon who knowingly or intentionally possesses a firearm commits unlawful possession of a firearm by a serious violent felon, a Level 4 felony." Bell does not contest his status as a serious violent felon and argues only that the State failed to prove that he possessed the firearm. Possession of contraband can be actual or constructive: "Actual possession occurs when a person has direct physical control over the item [and c]onstructive possession occurs when somebody has the intent and capability to maintain dominion and control over the item." *Henderson v. State*, 715 N.E.2d 833, 835 (Ind. 1999) (citation and internal quotation omitted). "In cases where the defendant has exclusive possession over the premises on which the contraband is found, an inference is permitted that the defendant knew of its presence and was capable of controlling it." *Washington v. State*, 902 N.E.2d 280, 288 (Ind. Ct. App. 2009) (citing *Macklin v. State*, 701 N.E.2d 1247, 1251 (Ind. Ct. App. 1998)).

The evidence presented at trial supports a finding of exclusive control of the car by Bell for some time prior to his arrest on November 23, 2014. Woods testified that she lent the car to Bell in November of 2014, and Woods told Detective Greenlee that Bell had had the car for four weeks as of November 23, 2014. Woods testified that neither she nor her husband owned a handgun or had placed one in the car.

Bell points to his testimony that he lent the car to a friend whose wife owned a gun three days before his arrest and only retrieved it approximately one hour

before his arrest. The jury, however, was not required to credit this testimony and did not. In any event, Woods testified that she saw the car at Bell's residence both two days before the arrest and two hours before the arrest, directly contradicting Bell's testimony on this point. The State produced sufficient evidence to establish Bell's exclusive control of the car during the relevant time period, which is sufficient to permit an inference that Bell knew of the handgun's presence and was capable of controlling it. *See, e.g.*, *Bradshaw v. State*, 818 N.E.2d 59, 63 (Ind. Ct. App. 2004) ("In this case, the handgun seized from the vehicle was located directly beneath the seat that Bradshaw occupied when the stop occurred. Moreover, the handle of the pistol was visible to Officer Luster, it faced the front of the vehicle and the gun was easily accessible to Bradshaw, who had been riding as a front-seat passenger. Bradshaw engaged in furtive movements by fidgeting around his waist and by reaching under the seat. When Officer Luster announced that a gun had been seized from the vehicle, Bradshaw attempted to flee the scene. In light of this evidence, we conclude that there is probative evidence from which a reasonable fact finder could conclude that Bradshaw was in possession of the handgun.") (record citations omitted).

## II. Resisting Law Enforcement

[14] In order to convict Bell of Level 6 felony resisting law enforcement, the State was required to establish that he

> knowingly or intentionally … forcibly resist[ed], obstruct[ed], or interfere[d] with a law enforcement officer or a person assisting

the officer while the officer is lawfully engaged in the execution of the officer's duties [and] dr[ew] or use[d] a deadly weapon, inflict[ed] bodily injury on or otherwise cause[d] bodily injury to another person, or operate[d] a vehicle in a manner that creates a substantial risk of bodily injury to another person[.]

Ind. Code § 35-44.1-3-1(a). -1(b).

Bell first argues that he had no recollection of the altercation with police officers, thereby negating any finding that he had the necessary *mens rea*. The jury was not required to credit Bell's self-serving testimony on this point, and did not. In any event, an audio recording of the incident would seem to strongly contradict Bell's account, as Bell can be heard shouting at police officers for over five minutes as they struggled to subdue him. Bell invites us to reweigh the evidence, which we will not do.

Bell next argues that the State failed to establish that his resistance was "forcible." As the Indiana Supreme Court has clarified,

> In *Spangler v. State*, we held that the word "forcibly" is an essential element of the crime and modifies the entire string of verbs—resists, obstructs, or interferes—such that the State must show forcible resistance, forcible obstruction, or forcible interference. 607 N.E.2d 720, 722-23 (Ind. 1993). We also held that the word meant "something more than mere action." *Id.* at 724. "[O]ne 'forcibly resists' law enforcement when strong, powerful, violent means are used to evade a law enforcement official's rightful exercise of his or her duties." *Id.* at 723. "[A]ny action to resist must be done with force in order to violate this statute. It is error as a matter of law to conclude that 'forcibly resists' includes all actions that are not passive." *Id.* at 724.

But even so, "the statute does not demand complete passivity." *K.W. v. State,* 984 N.E.2d 610, 612 (Ind. 2013). In *Graham v. State*, we clarified that "[t]he force involved need not rise to the level of mayhem." 903 N.E.2d 963, 965 (Ind. 2009). In fact, even a very "modest level of resistance" might support the offense. *Id.* at 966 ("even 'stiffening' of one's arms when an officer grabs hold to position them for cuffing would suffice").

*Walker v. State*, 998 N.E.2d 724, 726-27 (Ind. 2013).

[17] Bell contends that the evidence establishes nothing more than that he was merely trying to lift himself off the ground to breathe. The State presented ample evidence to establish otherwise. Detective Grooms testified that six police officers in total were required to gain control of Bell, Bell was thrashing violently and resisted all efforts to keep him on the ground, and Bell was kicking as he attempted to control Bell's legs. Detective Grooms characterized the struggle as a "fight[.]" Tr. p. 128. Detective Grooms also described "wrestling" with Bell when he slipped and injured his knee. Tr. p. 128. Officer Drummer testified that Bell used his hands to push officers away, Bell grabbed his ankles, Bell attempted to grab his gun, and officers had to force Bell's arms behind his back. Detective Greenlee testified that Bell pushed himself off of the ground with three officers pushing him down and that it took the efforts of all of the officers present to handcuff Bell behind his back. To say the least, the State produced ample evidence to establish that Bell forcibly resisted the officers. Again, Bell invites us to reweigh the evidence, which we will not do.

[18] Finally, Bell cites *Smith v. State*, 21 N.E.3d 121 (Ind. Ct. App. 2014), and argues that the State has not established that his resistance caused Detective Grooms's

injury. As mentioned, in order to support a conviction for Level 6 felony resisting law enforcement, the State was required to prove, *inter alia*, that Bell "inflict[ed] bodily injury on or otherwise cause[d] bodily injury to another person[.]" Ind. Code § 35-44.1-3-1(b). In *Smith*, a police officer attempted to handcuff Smith, suspected of shoplifting, but Smith refused to comply. *Smith*, 21 N.E.3d at 123. Finally, the officer pulled Smith's arm as hard as he could, and the duo ended up on the ground. *Id*. The Officer suffered lacerations from being on the pavement. *Id*. We concluded that the State failed to establish that Smith inflicted or caused the injury to the officer because the officer fell when forcing her to the ground and she was a passive participant in the encounter. *Id*. at 125.

[19] *Smith*, however, is easily distinguished from the instant case. Here, instead of being passive, Bell was violently thrashing and resisting all attempts to subdue him, kicking, grabbing, and otherwise using great force against the officers. Detective Grooms slipped in the mud and injured his knee as a direct result of Bell's kicking, which kicking Detective Grooms was trying to control when he was injured. Again, Bell's argument in this regard is nothing more than an invitation to reweigh the evidence, which we will not do.

[20] The judgment of the trial court is affirmed.

Bailey, J., and Altice, J., concur.