## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 12 2019, 10:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David M. Payne
Ryan & Payne
Marion, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Sierra A. Murray
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Martin Morales,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 12, 2019

Court of Appeals Case No.
18A-CR-2230

Appeal from the Grant Superior
Court

The Honorable Jeffrey D. Todd,
Judge

Trial Court Cause No.
27D01-1706-F2-12

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, Martin Morales was convicted of two counts of dealing in methamphetamine, a Level 3 felony and a Level 5 felony. The trial court imposed an aggregate sentence of twelve years to be served at the Indiana Department of Correction. On appeal, Martin raises two issues for our review: (1) whether the State presented sufficient evidence to sustain Morales' conviction of dealing in methamphetamine, a Level 3 felony, and (2) whether the State presented sufficient evidence to sustain Morales' conviction of dealing in methamphetamine, a Level 5 felony. Concluding the State presented sufficient evidence on both counts, we affirm.

# Facts and Procedural History

[2] On June 23, 2017, the Grant County J.E.A.N. (Joint Effort Against Narcotics) team was conducting surveillance of a rural area when they observed the occupants of a van engage a male driving a moped in a suspected drug deal. Police later identified the driver of the moped as Morales. *See* Transcript at 106-07, 126. Police conducted a traffic stop of the van and one of its passengers, M.W., was found to be in possession of methamphetamine.

[3] M.W. informed police that he had purchased the methamphetamine from an individual he knew simply as "Clown." Tr. at 95. M.W. later identified "Clown" as Morales at trial. *See id.* Pursuant to an agreement to avoid prosecution by acting as a confidential informant, M.W. contacted Morales and

arranged to purchase additional methamphetamine that evening. Police provided M.W. with $120 in marked currency and both audio and video recording devices. Detective Josh Zigler, a member of the J.E.A.N. team, drove M.W. to a location near where police had conducted surveillance earlier that the day.

[4] As Detective Zigler and M.W. arrived at the predetermined location, Detective Zigler saw Morales, whom he recognized from prior police encounters, standing by the side of the road attempting to get their attention. Morales instructed Detective Zigler to pull onto a property consisting of a trailer, a small bus, and a garage, and to park in the yard in front of the trailer. M.W. exited the vehicle and walked with Morales out of the sight of Detective Zigler. After completing the purchase, M.W. returned to the vehicle with 0.96 grams of a substance later confirmed to be methamphetamine. Detective Zigler and M.W. then left the property and police requested a search warrant.

[5] While waiting on a search warrant to be issued for the property, police observed a vehicle approach the trailer and park in the yard. The vehicle's passenger, a woman later identified as Lanelle Ralston, briefly entered the trailer and returned to the vehicle. Police conducted a traffic stop on the vehicle as it attempted to leave the area and Ralston was found to be in possession of methamphetamine. Ralston stated that she had purchased the methamphetamine from Shannon Hall and had watched her weigh it on a scale inside the trailer. Soon thereafter, police executed a search warrant on the property. Morales and Hall were found in the living room of the trailer where

they were both taken into custody. A search of Morales' person revealed $572, $120 of which was later identified as the marked currency from M.W. *See* Exhibits, Volume 3 at 21, Exhibit 13.

[6] Police located a "black zipper type bag" containing a glass jar in the master bedroom of the trailer. Tr. at 112. Inside the glass jar, 9.86 grams of methamphetamine were divided into four plastic bags. Police also found 0.27 grams of methamphetamine on top of a nearby dresser. The search of the bedroom also revealed scales; plastic baggies, some of which were torn into smaller pieces consistent with common drug dealing techniques; and a spoon, knife, and an "aluminum foil boat which is used to smoke methamphetamine." *Id.* at 160. Police found a glass smoking pipe and several additional scales in the living room.

[7] Hall and Morales were transported to the Grant County Jail. Morales agreed to be interviewed by Detective Zigler and, following a *Miranda* warning, Morales admitted to using and possessing methamphetamine and that he sometimes sold methamphetamine to support his use. *See* Exhibits, Vol. 3 at 24, Exhibit 16; Tr. at 60. Detective Zigler had worn a backwards hat during the controlled buy and when he put his hat on backwards during the interview, Morales stated, "you were in that black truck." *Id;* Tr. at 61.

[8] On June 29, 2017, the State charged Morales with Count I, dealing in methamphetamine, a Level 2 felony, which requires possession with the intent to deliver at least ten grams of methamphetamine. *See* Ind. Code § 35-48-4-

1.1(a)(2), (e)(1). Morales was also charged with Counts II and III, dealing in methamphetamine, both Level 4 felonies, which require knowingly or intentionally delivering at least one gram, but less than five grams, of methamphetamine. *See* Ind. Code § 35-48-4-1.1(a)(1), (c)(1). On July 24, 2018, the State dismissed Count III and amended Count II to a Level 5 felony, which requires knowingly or intentionally delivering methamphetamine, but does not require a specific amount. *See* Ind. Code § 35-48-4-1.1(a)(1).

[9] The case proceeded to a trial on July 30, 2018. On August 1, a jury found Morales guilty of dealing methamphetamine as a Level 3 felony, a lesser included offense of Count I requiring possession with intent to deliver at least five grams but less than ten grams of methamphetamine. *See* Ind. Code § 35-48-4-1.1(a)(2), (d)(1). The jury also found Morales guilty of Count II, dealing methamphetamine as a Level 5 felony. On August 30, the trial court sentenced Morales to twelve years at the Indiana Department of Correction for the Level 3 felony and four years for the Level 5 felony, to be served concurrently. Morales now appeals.

# Discussion and Decision

## I. Standard of Review

[10] When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh the evidence nor judge witness credibility. *Bailey v. State,* 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from

such evidence." *Id.* We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.*

*Clemons v. State,* 996 N.E.2d 1282, 1285 (Ind. Ct. App. 2013), *trans. denied.* The evidence need not overcome every hypothesis of innocence; rather, the evidence is sufficient if an inference may "reasonably be drawn from it to support the verdict." *Drane v. State,* 867 N.E.2d 144, 146-47 (Ind. 2007).

# II. Sufficiency of the Evidence

## A. Count I: Dealing in Methamphetamine, a Level 3 Felony

First, Morales challenges his conviction of dealing in methamphetamine, a Level 3 felony, contending only that the State failed to present sufficient evidence to prove that he possessed the methamphetamine found in the bedroom of the trailer. *See* Appellant's Brief at 14 ("The element being challenged under Issue #1 is whether Morales possessed the methamphetamine found in the bedroom of the trailer.")

Indiana Code section 35-48-4-1.1 provides:

> (a) A person who:
>
> > (1) knowingly or intentionally:
> >
> > > (A) delivers; or
> > >
> > > (B) finances the delivery of;

methamphetamine, pure or adulterated; or

> (2) possesses, with intent to:
>
>> (A) deliver; or
>>
>> (B) finance the delivery of;
>>
>> methamphetamine, pure or adulterated;
>
> commits dealing in methamphetamine, a Level 5 felony, except as provided in subsections (b) through (e).
>
> * * *
>
> (d) The offense is a Level 3 felony if:
>
>> (1) the amount of the drug involved is at least five (5) grams but less than ten (10) grams; or
>>
>> (2) the amount of the drug involved is at least one (1) gram but less than five (5) grams and an enhancing circumstance applies.

[13] A conviction for a drug offense may be supported by actual or constructive possession. *Lampkins v. State*, 682 N.E.2d 1268, 1275 (Ind. 1997), *modified on reh'g*, 685 N.E.2d 698 (Ind. 1997). Where, as here, the State seeks to prove a defendant possessed contraband prior to its discovery, the State utilizes the theory of constructive possession. *Cannon v. State*, 99 N.E.3d 274, 279 (Ind. Ct. App. 2018), *trans. denied*. Constructive possession involves actual knowledge of the presence of the contraband along with the intent and capability to maintain dominion and control over it. *Washington v. State*, 902 N.E.2d 280, 288 (Ind. Ct. App. 2009), *trans. denied*. Furthermore:

> In cases where the defendant has exclusive possession over the premises on which the contraband is found, an inference is

permitted that the defendant knew of its presence and was capable of controlling it. When possession is nonexclusive, however, additional circumstances must be present to support the inference that the defendant intended to maintain dominion and control over the contraband and that the defendant had actual knowledge of its presence and illegal character. Such additional circumstances include, but are not limited to, the following: (1) incriminating statements by the defendant, (2) attempted flight or furtive gestures, (3) location of substances like drugs in settings that suggest manufacturing, (4) proximity of the contraband to the defendant, (5) location of the contraband within the defendant's plain view, and (6) the mingling of the contraband with other items owned by the defendant.

*Id*. (citations omitted). Because Morales' possession of the trailer was non-exclusive, we must consider whether the State presented evidence of additional circumstances sufficient to support Morales' conviction under a theory of constructive possession. We conclude that it did.

[14] First, Morales made incriminating statements during the police interview following his arrest in the form of admitting to using and possessing methamphetamine and that he sometimes sold methamphetamine to support his use. *See* Tr. at 60; Exhibits, Vol. 3 at 24, Exhibit 16. Morales also stated that he recognized Detective Zigler from the controlled buy. Second, Morales became "visibly agitated" as police entered the trailer prompting an officer to disregard Hall in order to first detain Morales. Tr. at 132. Third, police discovered most of the methamphetamine divided into four separate baggies along with scales and additional plastic baggies, some of which were torn into smaller pieces consistent with common drug dealing techniques. This evidence

is sufficient to demonstrate a drug manufacturing setting. *See* Ind. Code § 35-48-1-18(1)(A) (defining the manufacture of a controlled substance in relevant part as "the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin . . . and *includes any packaging or repackaging of the substance*") (emphasis added). And fourth, although Morales was detained in the living room of the trailer and methamphetamine was found in the master bedroom, given the small size of the trailer, Morales was still in close proximity to the methamphetamine and in even closer proximity to paraphernalia, such as a glass smoking pipe and several additional scales found in the living room.

[15] Beyond presenting at least some evidence of four of the six examples of additional circumstances from *Washington* listed above, the State presented other evidence on which the jury could have reasonably relied regarding constructive possession. *See* 902 N.E.2d at 288. In particular, Morales was arrested on the same property and in close physical and temporal proximity to the location of the controlled buy, from which Morales was still in possession of the marked currency, and the bedroom was the only location on the property where methamphetamine was found. Such evidence supports a reasonable inference that the small amount of methamphetamine sold to the confidential informant was derived from the larger amount of methamphetamine found in a drug manufacturing setting and separated into four individual plastic bags. And, despite evidence that Hall also sold methamphetamine that same evening,

Detective Zigler explained that it is common for people to share stashes of drugs. Tr. at 85. We conclude that the totality of this additional evidence was sufficient to support a conviction under a theory of constructive possession.

## B. Count II: Dealing in Methamphetamine, a Level 5 Felony

Next, Morales challenges his conviction of dealing in methamphetamine, a Level 5 felony, again alleging the State failed to present sufficient evidence to sustain his conviction. To the extent we can discern Morales' argument, Morales' asserts that because the identity of the seller could not be reliably determined from police audio and video recordings of the controlled buy, the State therefore failed to satisfy its burden of proof as to each element of the crime. *See* Appellant's Br. at 23.

In *Steelman v. State,* the defendant had contacted a confidential informant and informed her that he had a quarter pound of marijuana for sale. 486 N.E.2d 523 (Ind. 1985). The confidential informant notified police and met with the defendant inside his trailer where he sold her the quarter pound of marijuana for $120. Despite the fact that audio of the transaction was "ninety percent inaudible; and . . . erased[,]" our supreme court held the evidence was "more than sufficient to support this conviction." *Id*. at 524, 525.

As Morales himself admits, he was identified by both M.W. and Detective Zigler as the individual who participated in the controlled buy and he was subsequently taken into custody in possession of the $120 of marked currency.

*See* Appellant's Br. at 23. Regardless of whether his identity could be reliably determined from audio and video records of the controlled buy, we conclude this evidence was sufficient to support his conviction.

# Conclusion

[19]     For the reasons set forth above, we conclude there was substantial evidence of probative value such that a reasonable trier of fact could have concluded Morales was guilty beyond a reasonable doubt of both counts of dealing in methamphetamine. We therefore affirm.

[20]     Affirmed.

Riley, J., and Kirsch, J., concur.